J-A24013-16

2017 PA Super 130

| MONICA GAVIN AND LUCIA CAREZANI, EXECUTRIX OF THE ESTATE OF JAMES GAVIN, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| ELAINE LOEFFELBEIN | No. 341 EDA 2016 |

Appeal from the Judgment Entered March 11, 2016
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2014-C-914

BEFORE:  BOWES, OTT AND SOLANO, JJ.

OPINION BY BOWES, J.:                              **FILED MAY 01, 2017**

Monica Gavin, individually, and Lucia Carezani, in her capacity as executrix of the estate of James Gavin, raise various challenges to the proceedings that culminated in a jury award in favor of Appellee Elaine Loeffelbein.  We affirm.

On March 25, 2014, Monica[1] instituted this action *pro se* against Elaine, presenting the following allegations.  Monica was married to James Gavin, who was Elaine's brother.  On May 28, 2010, Monica filed an action in divorce from James, but both Monica and James continued to reside at the marital residence with their two children, Edric and Aubrey.  Monica and

_____

[1]  We have utilized first names in this opinion to facilitate an easier understanding of the narrative.

James lived separate and apart within that abode. On May 24, 2012, the Honorable Edward D. Reibman of the Lehigh County Court of Common Pleas appointed an emergency guardian, Laurie Dart Schnaufer, for James. Ms. Schnaufer placed James in an assisted living facility in Allentown while Monica remained in the marital home with the children. Without the knowledge of Monica or Ms. Schnaufer, Elaine and James went to the marital residence on July 9, 2012. Edric, who was seventeen years old, and Aubrey, who was fourteen, allowed Elaine and James inside. Monica claimed that, even though James co-owned the residence, the entry was unauthorized because James was not capable of giving consent to it.

The complaint also averred that James and Elaine, with the assistance of Edric and Aubrey, removed a collection of rare books and autographs with an estimated value of $515,000 and took it to a storage locker over which Elaine had control. Monica admitted in the complaint that the collection of books and autographs belonged to James. Complaint, 3/25/14, at ¶ 17. She reported that she had inventoried eighty percent of that collection before James and Elaine removed it from the marital residence. Monica contended that the collection was stolen from the marital home since James did not have the capacity to consent to the transfer of control over the collection to Elaine. On August 20, 2012, Judge Reibman appointed Elaine permanent guardian of James.

Monica also indicated that the following occurred. The court overseeing the divorce proceeding accorded Monica the right to inventory James' collection of rare books and autographs. The boxes containing the collection were taken from the storage facility to the office of Elaine's counsel, where Monica catalogued the items in the boxes in a room by herself. In her *pro se* complaint, Monica averred that 296 items with an estimated value of $236,161 were missing from the boxes brought to their office. Monica maintained that she lost $236,000 in marital assets as a result of Elaine's actions and requested compensatory and punitive damages against Elaine.

Elaine filed preliminary objections to the complaint arguing that the complaint was insufficient to support a claim for relief, including a punitive damages award. She observed that Monica had failed to specify the cause of action that she purported to present and continued that Monica failed to present any specifics to support her position that Elaine had been negligent.

Monica obtained an attorney, who thereafter filed an amended complaint, wherein the following supplemental averments were presented. The collection included rare books, autographs, antiques, and memorabilia valued at approximately $515,000, and Monica had partially inventoried the collection before James and Elaine removed it from the marital home. Monica claimed that she owned the collectibles and that Elaine had stolen, misplaced, or was otherwise accountable for the collection after its removal.

Monica continued that items were missing from the collection after it was taken from the marital residence and again claimed that those articles had an estimated value of $236,000.

The amended complaint raised counts in trespass, conversion, negligence, and punitive damages. It specified that Elaine purportedly was negligent because she failed to 1) obtain lawful consent to remove James' collection on July 9, 2012; 2) properly store and safeguard the collection after removing it; 3) inventory and oversee the collection; 4) insure the collection against loss; 5) take reasonable steps to prevent the collectibles from being stolen, lost, or misplaced; and 6) return the collection when Monica demanded it be placed in her custody.

As damages, Monica claimed the loss of collectibles, which were enumerated in an exhibit to the amended complaint, with a value of $236,000. She requested punitive damages by averring that Elaine's conduct was extreme and outrageous in that Elaine took "advantage of a legally incompetent person (i.e. James Gavin) by tricking her way into [Monica's] home, without lawful consent, and removing irreplaceable collectibles[.]" Amended Complaint, 5/22/14, at ¶ 27.

Elaine responded to the amended complaint with another set of preliminary objections raising the contentions that the pleadings were legally insufficient to support the outlined causes of action. She also averred that the complaint failed to join a necessary party, James Gavin. Monica then

filed a second amended complaint, which added as a plaintiff, "James Gavin, an incapacitated person, by Susan Maurer, guardian." Second Amended Complaint, 6/2/14, at 1, 2. Monica indicated that on November 15, 2013, Elaine had been replaced as James' guardian by Ms. Maurer.

Ms. Maurer filed preliminary objections to the second amended complaint maintaining that James lacked the capacity to be brought into the suit and that James and Monica had an agreement in place in the divorce action for an alternative resolution involving the same collection. Elaine also filed preliminary objections to the second amended complaint averring that the trespass count was legally insufficient since it did not aver injury to the real estate and that there were insufficient facts to support an award for punitive damages. Both of these preliminary objections were overruled, and Elaine filed a responsive pleading to the second amended complaint.

This civil action was assigned to the same judge who had presided over James' guardianship proceedings. Discovery was conducted, and Elaine filed a motion for summary judgment, which was denied. On January 24, 2015, James died, and the caption was amended to reflect that Lucia Carezani, in her capacity as executrix of the estate of James Gavin, was substituted as plaintiff. The matter proceeded to a jury trial that occurred from June 9-12, 2015.

The following evidence was adduced at trial. Monica married James in 1987, producing two children. In 1997, they moved to the marital residence

on Jordan Road in Lehigh County. Monica was employed as a physician while James, who was well-educated, served as a stay-at-home father. After Monica filed for divorce in May, 2010, James desired to remain close to his children, as he had been their primary caregiver. Even though he and Monica occupied separate floors, James continued to live at the marital home, and the property remained in their joint names. As James believed that Monica was alienating his children from him, the living situation became stressful for James, and he began to display signs of dementia.

James had a collection of memorabilia, which he kept in boxes in the basement, and he desired to bestow that collection on his children. By April 2012, James became concerned that Monica would dissipate the collection, and sought to protect it. James asked his neighbor, David Greene, to remove part of the collection from the Jordan Road residence. Boxes from the collection were taken to a storage facility rented on James' behalf.

On May 16, 2012, a petition was filed for appointment of an emergency guardian, pursuant to 20 Pa.C.S. § 5513,[2] over James' person and estate. Following a hearing, the trial judge found that James' ability to receive and evaluate information effectively and communicate reasonable decisions was impaired. That jurist entered an order on May 24, 2012,

_____

[2] We outline the provisions of this statute, *infra*, in connection with our analysis of the merits of Appellants' first issue as its language is pertinent therein.

appointing Ms. Schnaufer as an emergency guardian of James' person and estate.[3] The order directed the guardian to remove James from the Jordan Road residence and admit him to an independent living/personal care facility, which she did the following day. Ms. Schnaufer also was accorded the power to determine, assemble, and administer James' property.

In July 2012, Elaine traveled to Pennsylvania to visit James, and found him upset and anxious. He told Elaine that he wanted to remove the remaining boxes of his collection from Jordan Road and place them in the storage facility so that Monica would not destroy or dissipate it. James had directed Ms. Schnaufer to have the boxes removed, but she had failed to abide by his request, and he was dissatisfied with her. James' neurologist told Elaine that James should avoid stress as it would worsen his condition.

_____

[3] The May 24, 2012 order appointing an emergency guardian of the person and the estate of James provided that it was to "continue until conclusion of a full hearing on a petition pursuant to § 5511 of the Probate Estates and Fiduciaries Code, 20 Pa.C.S.A. § 5511, which shall be filed by the Petitioner within 30 days of the date of this Order." Plaintiff's Exhibit 1; Order of Court entered at 2012-0794, 5/24/12, at 2. We note that, "An emergency order appointing an emergency guardian of the estate shall not exceed 30 days." 20 Pa.C.S. § 5513. Thus, the May 24, 2012 order should not have provided that it expired when a hearing on the petition under § 5511 was filed. *See* 20 Pa.C.S. § 5511 ("The court, upon petition and hearing and upon the presentation of clear and convincing evidence, may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of his person or estate."). The record does not indicate when the § 5511 petition was actually filed, but the decree declaring James to be an incapacitated person is contained in the record, and was dated August 21, 2012. Plaintiff's Exhibit 3; Decree entered at 2012-0794, 8/21/12, at 1 ("James Gavin is declared to be an incapacitated person[.]").

On July 9, 2012, after James spoke with Elaine about his distress over his memorabilia remaining at Jordan Road, Elaine unsuccessfully attempted to reach Ms. Schnaufer. Elaine was able to contact James' attorney, Gerald Barr, Esquire, who informed her that James had the right to remove his personal things from the Jordan Road residence, and that she could go to that residence with James for that purpose. After receiving this information from the lawyer, Elaine and James went to the Jordan Road residence, and James' children admitted them into the house. Next, James, Elaine, and the two children took between eight and ten boxes containing the rest of the memorabilia collection and placed those boxes in the storage facility.

On August 20, 2012, a hearing for a permanent guardianship was held and James was found to be incapacitated and in need of plenary guardianship services. The court appointed Elaine guardian of James' person and estate. Later, the boxes taken by Elaine and James were delivered to Mr. Barr's office for Monica to inventory. Monica was left alone in the room with the boxes when she inspected them. Monica, who represented that she had inventoried about eighty percent of the collection before it was taken, claimed that items worth $236,000 were missing from the boxes.

After Appellants presented their evidence, the trial court granted Elaine's request for a nonsuit as to the trespass and punitive damages counts set forth in the complaint. The jury returned a verdict in favor of Elaine on the conversion and negligence counts. This appeal followed denial

of post-trial motions and entry of judgment on the verdict. Appellants raise these positions:

> A. Did the trial court's instructions to the jury contain substantial errors so that relief must be granted?
>
>> 1. Did the court err by charging the jury to determine whether James Gavin consented to the taking of marital property where he had been appointed a temporary guardian with authority over all his property?
>>
>> 2. Did the court err by failing to charge the jury that mistake of law and mistake of fact are not defenses to conversion?
>>
>> 3. Did the court err by failing to charge the jury that defendant had a duty of reasonable care over collectibles she voluntarily took control over?
>>
>> 4. Did the court err by charging the jury spoliation against Appellants where there was no bad faith and the items allegedly disposed of had no evidentiary value?
>
> B. Did the court err by granting a nonsuit as to trespass where James Gavin could not lawfully consent to defendant entering the Gavin residence and taking the collectibles?
>
> C. Did the court err by granting a nonsuit as to punitive damages where Appellant[s] proved an intentional tort and evidence was offered to support the conclusion that defendant acted in total disregard for the rights of others?

Appellants' brief at 6.

Appellants' first argument is premised upon the position that James, being incapacitated on July 9, 2012, was incapable of giving consent to Elaine's entry into the marital home and removal of his personal memorabilia collection from that residence. Based upon this premise, they

- 9 -

claim that the trial court erroneously instructed the jury that it could determine whether James had consented to Elaine's actions on July 9, 2012. Appellant's brief at 16.

Our standard of review is as follows:

> Under Pennsylvania law, our standard of review when considering the adequacy of jury instructions in a civil case is to "determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case." **Stewart v. Motts**, 539 Pa. 596, 654 A.2d 535 (1995). It is only when "the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue" that error in a charge will be found to be a sufficient basis for the award of a new trial. **Id.** at 540. . . .

**Lewis v. CRC Indus., Inc.**, 7 A.3d 841, 844 (Pa.Super. 2010).

In the present case, the trial court outlined various sections of the guardianship law to the jury, including the definition of an incapacitated person and excerpts of the statute outlining the procedure for appointment of an emergency guardian. The trial court also read portions of the May 24, 2012 order appointing an emergency guardian for James and then summarized what occurred during the guardianship proceeding. The court thereafter advised the jury:

> With respect to the emergency guardian, the emergency guardian of the person was limited to placement, and to make medical decisions. And the emergency guardian of the Estate was for the powers that I mentioned, in terms of – including other things – assembling Mr. Gavin's personal property.

> The power to the emergency guardian of the person is not exclusive to the guardian; that is to say, that Mr. Gavin was not precluded from expressing his wishes, and making some decisions regarding his personal property.

- 10 -

N.T. Trial (Vol. II), 6/10/15, at 969.

Although their argument is prolix, Appellants' position boils down to one essential assertion: James did not have the legal ability to consent to Elaine's entry into his home or to consent to her removal of his memorabilia collection because an emergency guardian had been appointed for him on May 25, 2012. Concomitantly, Appellants maintain that the trial court was wrong when it instructed the jury that James was not precluded from expressing his wishes and making some decisions about his personalty. They also assert error occurred when the court told the jury it could decide whether James had consented to Elaine's July 9, 2012 activities.

Appellants point out that the May 25, 2012 order accorded Ms. Schnaufer the power to "ascertain, assemble and administer all of the property owned by James Gavin." Plaintiff's Exhibit 1 (Order Appointing Emergency Guardians, 5/24/12, at 2). They continue that this language meant that the guardian of the estate had sole management and control over all of James' property "to the exclusion of [James] Gavin." Appellants' brief at 20. Appellants thus argue that the emergency guardianship order abrogated James' legal ability to consent to Elaine's entry into his home and to her assumption of control over his memorabilia collection, and that they are entitled to judgment as a matter of law on their trespass and conversion causes of action.

Title 20 of the Pennsylvania Consolidated Statutes, known as the Probate, Estates, and Fiduciaries Code ("PEF Code"), governs guardianship proceedings in this Commonwealth beginning at § 5501. The PEF Code defines incapacity, stating that an incapacitated person "means an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is **partially or totally** unable to manage his financial resources or to meet essential requirements for his physical health and safety." (emphasis added). Also implicated herein is § 5513 of the PEF Code, which pertains to the appointment of an emergency guardian:

Notwithstanding the provisions of section 5511 (relating to petition and hearing; independent evaluation), the court, upon petition and a hearing at which clear and convincing evidence is shown, may appoint an emergency guardian or guardians of the person or estate of a person alleged to be incapacitated, when it appears that the person lacks capacity, is in need of a guardian and a failure to make such appointment will result in irreparable harm to the person or estate of the alleged incapacitated person. The provisions of section 5511, including those relating to counsel, shall be applicable to such proceedings, except when the court has found that it is not feasible in the circumstances. An emergency guardian so appointed for the person or estate of an alleged incapacitated person shall only have and be subject to such powers, duties and liabilities and serve for such time as the court shall direct in its decree. An emergency order appointing an emergency guardian of the person may be in effect for up to 72 hours. If the emergency continues, then the emergency order may be extended for no more than 20 days from the expiration of the initial emergency order. After expiration of the emergency order or any extension, a full guardianship proceeding must be initiated pursuant to section 5511. The court may also appoint an emergency guardian of the person pursuant to this section for an alleged incapacitated person who is present in this Commonwealth but is domiciled outside of this

Commonwealth, regardless of whether the alleged incapacitated person has property in this Commonwealth. **An emergency order appointing an emergency guardian of the estate shall not exceed 30 days**. After 30 days, a full guardianship proceeding must be initiated pursuant to section 5511.

20 Pa.C.S. § 5513 (emphasis added).

Initially, we observe that as of July 9, 2012, when the actions in question occurred, Ms. Schnaufer's appointment had expired and James no longer was operating under the appointment of an emergency guardian. The order appointing an emergency guardian was executed on May 24, 2012; under the express terms of § 5513, it expired on June 23, 2012. The permanent guardian was not appointed until August 21, 2012. Thus, on July 9, 2012, when James entered his home and removed his collection, he was *sui juris*. Appellants' present position fails for this reason alone.

Nevertheless, since this was a crucial issue at trial, we will address the question of whether the instruction in question was erroneous. We conclude that the May 24, 2012 order appointing an emergency guardian under § 5513 did not strip James of complete input into the administration of his personal property and of the ability to consent to Elaine's entry into his Jordan Road residence and removal of the remaining boxes of his collectibles to the storage facility.

The May 24, 2012 order indicated that James' internist had determined that he was "significantly impaired" in his ability to receive and evaluate information and to communicate reasonable decisions. Thus, James was

found to be impaired rather than incapacitated. As outlined, *supra*, a totally incapacitated person, as defined in pertinent part in § 5501 of the PEF Code, means someone whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is unable to manage his financial resources. James correctly knew that he owned a financial resource, a collection with significant monetary value, and effectively communicated his desires about that financial resource. The comments and concerns expressed by James establish that he was not totally incapacitated, as defined by § 5501.

In fact, James clearly conveyed to his neighbor and to Elaine his concern with Monica and her actions with respect to their children. Likewise, he cogently articulated that he wanted his children to have his memorabilia collection and that he feared that Monica might secret it from them. James correctly informed Elaine that he had repeatedly asked Ms. Schnaufer, his emergency guardian of the estate, to gather his collection and remove it from his marital residence, but Ms. Schnaufer had not responded.

Additionally, the May 24, 2012 order in question was premised upon a finding that James **allegedly appeared** to be incapacitated. He was not declared legally incapacitated until a hearing was held under 20 Pa.C.S. § 5511 (a). ("The court, upon petition and hearing and upon the presentation of clear and convincing evidence, may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of

his person or estate.").  Until the clear and convincing proof was presented to the trial court and it rendered a decision that James was incapacitated, he was presumptively competent.  **See Estate of Haertsch**, 609 A.2d 1384, 1386 (Pa.Super. 1992) (emphasis and citation omitted) ("Mental capacity and competency are to be presumed and before any person shall be deprived of the right to handle his or her own property and manage his or her affairs there must be clear and convincing proof of mental incompetency and such proof must be preponderating*.*").  A finding of incapacity is only prospective in effect.  **In re Hastings' Estate**, 387 A.2d 865, 868 (Pa. 1978) ("A determination of incompetence is prospective only.").

Finally, in the present case, James was conveying his desire to take actions to ensure that his valuable collection of memorabilia would be transferred to his children.  He intended to gift his personal effects to them. We find that James' directions to Elaine indicated that he had the capacity to consent to entry into his home and removal of his personal property.

As our Supreme Court articulated in **In re Null's Estate**, 153 A. 137, 139 (Pa. 1930), "Capacity relates to soundness of mind, or, in other words, a mind that has full and intelligent knowledge of an act engaged in, an intelligent perception and understanding of the dispositions made of property, and the persons and objects one desires shall be the recipients of one's bounty."  Herein, James conveyed an awareness of: who he was, where he lived, his co-ownership of the Jordan Road property, who his

children were, that he was estranged from his wife, his ownership of a valuable collection of memorabilia, that he desired his children to receive it, and that he had been appointed a guardian. In light of his estrangement from Monica, James' children were the natural objects of his bounty. We thus conclude that Appellants' own proof demonstrated that James had the capacity to consent to entry into his house and to direct that the collection be removed so he could protect it for his children.

Finally, and most significantly, while the emergency guardian of the estate, Ms. Schnaufer, was accorded control over the administration of James' property, that appointment did not deprive James completely of any involvement with its disposition. Simply put, we reject Appellants' position that the appointment of an emergency guardian stripped James of all control over his property and abrogated his right to any input as to its disposition. As we noted in **In re Estate of Rosengarten**, 871 A.2d 1249, 1255 (Pa.Super. 2005) (emphasis added),

> the intentions of the incapacitated person are to be honored to the fullest extent possible. This concept is best illustrated in **Estate of Haertsch**, 437 Pa.Super. 187, 649 A.2d 719, 721 (1994): "It is clear that throughout the carefully drawn legislation [,being the guardianship provisions of the PEF Code,] **it was intended that the incapacitated person be permitted the fullest degree of freedom and control over his/her physical and financial affairs**."

This particular precept is outlined in the following provision of the PEF Code:

Recognizing that every individual has unique needs and differing abilities, **it is the purpose of this chapter to promote the general welfare of all citizens by establishing a system which permits incapacitated persons to participate as fully as possible in all decisions which affect them**, which assists these persons in meeting the essential requirements for their physical health and safety, protecting their rights, managing their financial resources and developing or regaining their abilities to the maximum extent possible and which accomplishes these objectives through the use of the least restrictive alternative; and recognizing further that when guardianship services are necessary, it is important to facilitate the finding of suitable individuals or entities willing to serve as guardians.

20 Pa.C.S. § 5502 (emphasis added).

The trial court in the present matter informed the jury that the fact that James had an emergency guardian of the estate due to an allegation that he was impaired did not preclude James from expressing his wishes and making some decisions about his property. This instruction was an accurate statement of the law, especially since James was not declared incapacitated at the time in question and in light of the evidence adduced at trial. The instruction, as a correct statement of the law under the circumstances, is thus not grounds for a new trial.

Appellants' second complaint is that the trial court's charge as to the elements of conversion was incorrect. Conversion is "the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification." **PTSI, Inc. v. Haley**, 71 A.3d 304, 314 (Pa.Super. 2013) (citations omitted). The trial court told the jury the following:

> Now I'm going to define conversion. Conversion essentially requires proof that the Defendant interfered without lawful justification, with a Plaintiff's right of property in a particular asset.
>
> Showing that the Defendant acted without lawful justification is an element of the prima facie case of conversion on which the Plaintiff bears the burden of proof. Lawful justification is not an affirmative defense.
>
> Where one lawfully comes into possession of a chattel, a conversion occurs under the Pennsylvania Law, if a demand for the chattel is made by the rightful owner and the other party refuses to deliver.

N.T. Trial (Vol. II), 6/10/15, at 971.

Appellants' position as to the conversion charge is that the trial court "erred by failing to charge the jury that mistake of law and mistake of fact are not defenses to conversion." Appellants' brief at 26. In *Hatwood v. Hosp. of the Univ. of Pennsylvania*, 55 A.3d 1229, 1235 (Pa.Super. 2012), we articulated the settled principle that "only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue that error in a charge will be found to be a sufficient basis for the award of a new trial." We also repeated the ensconced precept that "a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." *Id*. Simply put, the trial court was not required to instruct the jury in accordance with Appellants' proposed point for charge and, so long as the proper legal concepts were conveyed to the jury, a new trial will not be awarded.

Herein, the trial court set forth the elements of a cause of action in conversion, including that conversion occurs when property is taken without legal justification. The trial court's repeated admonition that Elaine's taking of the property had to be **legally justified** adequately expressed the concept that "mistake of law" and "mistake of fact" are not defenses to conversion. The conversion charge, as a whole, was neither unclear nor inadequate, and it did not have a tendency to mislead or confuse the jury regarding the applicable law. Hence, we decline to grant Appellants a new trial based on the conversion instruction disseminated to the jury.

Appellants' third complaint also concerns jury instructions; they maintain that the court erred when it did not "charge the jury that defendant had a duty of reasonable care over collectibles she voluntarily took control over." Appellants' brief at 30 (emphasis omitted). The trial court gave the following instruction as to negligence:

> Now I'm going to define negligence for you. In this case, you must decide whether Elaine Loeffelbein was negligent. A person must act in a reasonably careful manner to avoid harming others. The care required varies according to the circumstances, and the degree of danger at a particular time.
>
> You must decide how a reasonably careful person would act under the circumstances established by the evidence in this ease. A person who does something reasonably – I'm sorry. A person who does something a reasonably careful person would not do under the circumstances, is negligent. A person also can be negligent by failing to act. A person who fails to do something a reasonably careful person would do under the circumstances is negligent.

N.T. Trial (Vol. II), 6/10/15, at 970-71.

Appellants argue that the court should have specifically mentioned that Elaine had a duty to reasonably care for the collection. This entire case was solely about items purportedly missing from the recovered boxes containing the collection. In light of the facts and Appellants' position at trial, the jury certainly was aware that the averments relating to Elaine's negligence concerned her actions that allegedly resulted in lost artifacts of memorabilia. We decline to award a new trial based upon the trial court's failure to include the wording that Elaine's duty of care related to the "collectibles she voluntarily took control over."

Appellants' fourth contention is that the court improperly charged the jury as to spoliation. The following facts are pertinent. Monica claimed that she inventoried about eighty percent of the boxed collection from May 2012 through July 9, 2012. As noted, Monica performed a second inventory alone in Attorney Barr's office in May 2013. Monica averred that her second inventory revealed that 296 articles were gone, and that they were worth $236,000. In support of her position, Monica presented a spreadsheet inventory purportedly created prior to July 9, 2012, and pictures of some of the memorabilia in question. Monica professed that the computer that she used to create the inventory had crashed in the fall of 2013 and that the camera cards that she used to take pictures of the collectibles were damaged during a flood in her home. Monica admitted that she discarded the computer and camera cards.

During discovery, Elaine requested the computer and camera cards to ascertain if the spreadsheet inventory was actually prepared and if the pictures were taken before July 2012, instead of in May 2013, at the attorney's office. Elaine presented an expert witness who reported that, if Monica had not discarded the laptop and camera cards and had produced them for examination, information could have been recovered from the computer and camera cards regarding when the inventory spreadsheet was created and the pictures were taken. Elaine noted that Monica knew that the computer and camera cards could be pertinent in this matter by May 2013, when she allegedly discovered that articles were missing from the collection, and thereafter destroyed the laptop and camera cards in the fall of 2013.

As we observed in *Rodriguez v. Kravco Simon Co.*, 111 A.3d 1191 (Pa.Super. 2015), penalties for spoliation of evidence have been applied since the early 17th century. The spoliation doctrine is applicable to any case "where 'relevant evidence' has been lost or destroyed." *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div.*, 781 A.2d 1263, 1269 (Pa.Super. 2001), *aff'd sub nom. Mount Olivet Tabernacle Church v. Edwin Wiegand Div.*, 811 A.2d 565 (Pa. 2002). A party's destruction or loss of proof that is pertinent to a lawsuit can result in a variety of sanctions. *Parr v. Ford Motor Co.,* 109 A.3d 682 (Pa.Super. 2014).

In reviewing the propriety of a sanction for spoliation, "we must determine whether the court abused its discretion." *Id*. at 701 (citation

omitted). The trial court weighs three factors in deciding upon an appropriate penalty for spoliation, "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Id*. at 702 (citation omitted). For purposes of

> evaluation of the first prong, "the fault of the party who altered or destroyed the evidence," requires consideration of two components, the extent of the offending party's duty or responsibility to preserve the relevant evidence, and the presence or absence of bad faith. The duty prong, in turn, is established where: (1) the plaintiff knows that litigation against the defendants is pending or likely; and (2) it is foreseeable that discarding the evidence would be prejudicial to the defendants."

*Id*. (citations omitted).

One sanction that a court may choose to impose when evidence is lost or destroyed is to instruct the jury that it may infer "that the destroyed evidence would have been unfavorable to the position of the offending party." *Rodriguez*, *supra*. at 1196. The rationale for this spoliation inference is "nothing more than the common sense observation that a party who has notice that evidence is relevant to litigation and who proceeds to destroy evidence is more likely to have been threatened by" the proof in question. *Id*.

The crux of this lawsuit involved Monica's accusation that items in the memorabilia collection were missing after it was taken on July 9, 2012. She

represented that she inventoried eighty percent of the collection before July 9, 2012, and presented proof of her inventory that consisted of spreadsheets created in a computer and pictures contained in camera cards. An examination of the computer and camera card by Elaine's expert witness would have led to verification as to when the pictures were taken and the spreadsheets were created. After May 2013, when she purportedly discovered the missing items, Monica intentionally destroyed the computer and camera cards, which created evidence used in this lawsuit and which could have been examined by Elaine's expert.

Based upon these facts, the trial court allowed the jury, in its discretion, to decide whether Monica credibly explained why the computer and camera card were unavailable for Elaine's inspection. To wit, the trial court disseminated the Standard Jury Instruction for Spoliation of Evidence, Instruction 5.60:

> If a party disposes of a piece of evidence before the other party had an opportunity to inspect it, and the party who disposed of the evidence should have recognized the evidence was relevant to an issue in this lawsuit, then you **may find** that this evidence would have been unfavorable to them, **unless they satisfactorily explain why they disposed of this evidence**.

N.T. Trial (Vol. II), 6/10/15, at 963 -64 (emphases added).

On appeal, Appellants posit that there was no bad faith by Monica since the computer crashed and the camera cards were damaged by water. However, whether or not Monica acted in bad faith was wholly dependent on

whether her testimony about how the objects came to be destroyed was worthy of belief. Appellate courts do not decide whether someone has testified truthfully, and we cannot find that Monica operated in "good faith" unless we credit her explanation of why she disposed of the evidence. The jury was given the task of deciding if Monica was being truthful about why she destroyed the computer and camera card. There was no error in this respect.

Appellants also suggest that the spoliation charge was not warranted because the computer and camera cards had "no evidentiary value." Appellants' brief at 34. Once again, a finding that the computer and camera cards had "no evidentiary value" requires that we credit that the computer crashed and that the cards were water-damaged. Elaine's expert witness reported that the computer would have revealed whether the spreadsheets were created before July 2012 rather than after May 2013, when Monica had unfettered access to the collection alone in a room. In light of the facts in question, the important nature of the evidence in question, and Monica's actions, we cannot find that the trial court abused its discretion in giving the spoliation charge at trial. We therefore decline to grant Appellants a new trial on this basis.

Appellants' fifth averment is that the trial court improperly granted a nonsuit against them as to their trespass cause of action.

> A nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiffs, could not reasonably conclude that

the elements of the cause of action had been established. Furthermore, all conflicts in the evidence must be resolved in the plaintiff[s'] favor. In reviewing the evidence presented we must keep in mind that a jury may not be permitted to reach a verdict based on mere conjecture or speculation. We will reverse only if the trial court abused its discretion or made an error of law.

**Barnes v. Alcoa, Inc.**, 145 A.3d 730, 735 (Pa.Super. 2016).

In Pennsylvania, a person is subject to liability for trespass on land in accordance with the dictates of Restatement (Second) of Torts § 158. **Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Practical Knowledge**, 102 A.3d 501, 506 (Pa.Super. 2014).

One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally

(a) enters land in the possession of the other, or causes a thing or a third person to do so, or

(b) remains on the land, or

(c) fails to remove from the land a thing which he is under a duty to remove.

Restatement (Second) of Torts § 158. "One cannot be guilty of a trespass by illegal entry if his wrong is committed subsequent to a rightful entry where such entry was **by permission of the owner**. Restatement, Torts, § 158." **Gedekoh v. Peoples Nat. Gas Co.**, 133 A.2d 283, 284 (1957). Thus, "[a] right of entry constitutes an absolute defense to an action in trespass." **Id**. at 284-85.

To establish the circumstances surrounding Elaine's July 9, 2012 entry into the Jordan Road property, Monica presented as witnesses her children,

Edric and Aubrey, and Elaine. Elaine reported that James asked her to come with him to his home. When Elaine arrived at the residence, she followed James inside. Edric testified that, when Elaine and James came to the door, he and his sister granted them entry. Aubrey confirmed that James and Elaine arrived together to enter the residence.

Monica suggests that James could not authorize entry into his own home because he had been adjudicated an incapacitated person on May 24, 2012. First, as previously stated, the emergency order was entered upon an **allegation** of incapacity. Second, in the order, the trial court found that James was **impaired**, not incapacitated. Finally, the order in question lapsed on June 23, 2012, and was not in effect when James authorized Elaine to enter the home. Monica's evidence proved that a co-owner of the home, James, consented to Elaine's entry, and that consent abrogated Monica's right to bring an action for trespass against Elaine. Hence, the trial court properly granted nonsuit as to the trespass count.

In their final averment on appeal, Appellants complain that the trial court improperly granted a nonsuit as to their claim for punitive damages. Our Supreme Court set forth in *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770–71 (Pa. 2005):

> The standard governing the award of punitive damages in Pennsylvania is settled. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984) (*quoting* Restatement (Second) of Torts § 908(2) (1979)); *see also*

*Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355, 358 (1963). As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct. *See SHV Coal, Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702, 704 (1991); *Feld*, 485 A.2d at 747-48; *Chambers*, 192 A.2d at 358. *See also* Restatement (Second) of Torts § 908, comment b. The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct. *Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800, 803 (1989); Restatement (Second) of Torts § 908 (1) ("Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future."). Additionally, this Court has stressed that, when assessing the propriety of the imposition of punitive damages, "[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." *See Feld*, 485 A.2d at 748; *see also Martin v. Johns-Manville Corp.,* 508 Pa. 154, 494 A.2d 1088, 1097 n. 12 (1985) (plurality opinion).

Appellants' position that Elaine's conduct warranted the imposition of punitive damages is untenable.

Elaine did not operate with evil motive or with reckless indifference to anyone's rights. Elaine's actions were not so outrageous as to demonstrate willful, wanton or reckless conduct. Elaine acted upon legal advice that James could enter his own home and retrieve his own personal property. Punitive damages clearly were not warranted herein, and the trial court correctly granted nonsuit as to that claim. *See Phillips v. Cricket Lighters*, 883 A.2d 439, 447 (Pa. 2005) (manufacturer that failed to place child safety features on its lighters to avoid harm to children playing with them did not engage in conduct that "was so outrageous as to support an

award of punitive damages."); ***Valentino v. Philadelphia Triathlon, LLC***, 150 A.3d 483, 488–89 (Pa.Super. 2016) (triathlon organizer was not subject to liability for punitive damages in connection with death of triathlon participant where allegations sounded in negligence, even though averments included that defendant was "inattentive to the needs of the contestants, failed to inspect or maintain the event course, failed to warn of or remove dangerous conditions, failed to properly plan or organize the event, failed to follow safety standards, and failed to properly train and supervise its employees.").

As we conclude that Appellants' allegations on appeal do not warrant the grant of relief, we affirm.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2017