J-A27001-18

2019 PA Super 94

| | | |
|---|---|---|
| HARRIET MARSHALL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BROWN'S IA, LLC | : | No. 2588 EDA 2017 |

Appeal from the Judgment Entered July 10, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  September Term, 2015 No. 03279

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

OPINION BY BOWES, J.:                    **FILED MARCH 27, 2019**

Harriet Marshall appeals from the July 10, 2017 judgment in favor of
Appellee Brown's IA, LLC, and alleges that she is entitled to a new trial because
the trial court erred in refusing to give an adverse inference instruction based
on Appellee's spoliation of videotape evidence.  We vacate the judgment and
remand for a new trial.

Brown's IA, LLC ("ShopRite") owns thirteen grocery stores, one being
the Island Avenue ShopRite in Philadelphia.  On August 6, 2014, Ms. Marshall
slipped on water, fell in the produce aisle of the store, and aggravated a pre-
existing injury to her hip and back.  ShopRite employees came to her aid and

summoned medical assistance, and the manager completed an incident report immediately thereafter.[1]

Approximately two weeks later, ShopRite received a letter of representation from Ms. Marshall's counsel requesting that ShopRite retain, *inter alia*, surveillance video of the accident and area in question for six hours prior to the accident and three hours after the accident. Additionally, the letter cautioned:

> If any of the above evidence exists, and you fail to maintain same until the disposition of this claim, it will be assumed that you have intentionally destroyed and/or disposed of evidence. Please be advised that you are not permitted, and are in no position, to decide what evidence plaintiff would like to review for this case. Accordingly, discarding any of the above evidence will lead to an Adverse Inference against you in this matter.

Plaintiff's Exhibit 3 (letter from counsel, 8/18/14, at 1).

Ms. Marshall's slip and fall was captured on the store's video surveillance system. However, ShopRite decided to preserve only thirty-seven minutes of video prior to Ms. Marshall's fall and approximately twenty minutes after, and permitted the remainder to be automatically overwritten after thirty days. Subsequently, counsel for ShopRite told the jury in his opening statement

---

[1] The incident report was prepared by Ashley Jones, the Human Resources Manager. She noted therein that Ms. Marshall stated that she was getting a pepper in the produce department when she slipped and fell on water. Ms. Jones testified at trial that although she could not remember seeing water on the floor, "[i]f I didn't see it then I would put that on the report." N.T. Jury Trial, 1/12/17, at 76, 78. The report contained no such notation.

that, "it isn't possible to tell from the video if there was water on the floor, how it got there or when it got there." N.T. Jury Trial, 8/6/14, at 42.[2]

ShopRite's Risk Manager, Matthew McCaffrey, testified that it was ShopRite's "rule of thumb" to preserve video surveillance from twenty minutes before and twenty minutes after a fall. He opined that the video produced was sufficient to see the defective condition if it could be seen at all. Since the substance on the floor could not be seen on the retained portion of the video, he maintained it "would be a fool's errand" to go back several hours as requested. N.T. Jury Trial, 1/13/17, at 35. He added that it was impractical and costly to retain the requested six hours of pre-incident videotape.

At trial, ShopRite offered evidence of its reasonable care in keeping the store premises safe for customers. Managers testified that employees were trained in the importance of preventing slip and falls, and described financial incentives for employees who located and cleaned up spills. The store also uses the Gleason system, an electronic monitoring system whereby, once per hour, an employee walks around the store on a designated route that passes thirty-five buttons. As the employee inspects the floor in each area near the button, he or she uses an electronic wand to press the button indicating whether there was a wet spill, dry spill, or the area was clear. The system

---

[2] At the close of Plaintiff's case, ShopRite moved for a non-suit, alleging that there was no evidence as to how the liquid got on the floor or how long it was there. The trial court denied the nonsuit.

- 3 -

creates a log for each of the walk-throughs. The Gleason logs for the day of Ms. Marshall's fall indicated that the produce area where she fell was inspected from 7:07:52 a.m. to 7:09:59 a.m., and again at 8:01:42 a.m. through 8:05:34 a.m. Trial Exhibit P-2. Ms. Marshall fell at approximately 8:54 a.m., almost fifty minutes after the last Gleason inspection.

Ms. Marshall contended below that ShopRite's conscious decision not to retain the video evidence constituted spoliation, and she asked the trial court to give an adverse inference charge to the jury.[3] N.T. Jury Trial, 1/14/17, at 14. ShopRite argued there was no relevant evidence as the video did not show drops of water on the floor, and furthermore, it did not act in bad faith in deleting the additional video requested. The trial court observed first that the fact that the video was requested did not make it relevant. It concluded further that there was no bad faith on the part of ShopRite, and refused to give the requested adverse inference charge. The court did agree, however, that Ms. Marshall's counsel could argue to the jury that it should infer from ShopRite's decision not to retain more of the video prior to Ms. Marshall's fall that the video was damaging to ShopRite.

---

[3] Pa.S.S.J.I. 5.60, relating to spoliation of evidence, provides:

> If a party disposes of a piece of evidence before the other party had an opportunity to inspect it, and the party who disposed of the evidence should have recognized the evidence was relevant to an issue in this lawsuit, then you may find that this evidence would have been unfavorable to them, unless they satisfactorily explain why they disposed of this evidence.

Counsel for Ms. Marshall told the jury in closing argument that ShopRite made the conscious decision not to keep the video because it was harmful to them, and that the water was on the floor long enough that, with reasonable care, they should have seen and remedied it. Defense counsel countered,

> But you have seen the video, you have seen the quality of the video. Is there really any expectation that if more video had been saved that we would have seen something, we would have seen when this obviously small spot of water that you can't even see on the floor could have gotten on the floor?

N.T. Jury Trial, 1/17/17, at 71.

The jury returned a verdict in favor of ShopRite, finding no negligence. Ms. Marshall filed timely post-trial motions alleging that she was entitled to a new trial because the trial court erred in refusing to give the requested spoliation instruction to the jury. The motion was deemed denied pursuant to Pa.R.C.P. 227.4(1)(b), when more than one hundred and twenty days elapsed and the trial court did not rule on the motion. Judgment was entered on July 10, 2017, and Ms. Marshall timely appealed. She raises one question for our review:

> [ShopRite] deliberately failed to retain (i.e., destroyed) relevant and material video surveillance evidence which, if preserved, would have established: a) when the dangerous condition that caused [Ms. Marshall] to slip and fall came into existence; and b) whether [ShopRite] fulfilled its duty to make its supermarket safe for customers by adhering to its policies and procedures of inspecting for and removing defects, as it claims to have done. Given this fact, did the trial court abuse its discretion by declining to read a spoliation of evidence instruction to the jury at trial?

Appellant's brief at 4.

At issue herein is whether the trial court erred in refusing a requested adverse inference instruction based on ShopRite's alleged spoliation of video surveillance evidence. We review trial court rulings on spoliation claims for an abuse of discretion. *Mt. Olivet Tabernacle Church v. Edwin L. Wiegand Div.*, 781 A.2d 1263, 1269 (Pa.Super. 2001). Our Supreme Court defined spoliation of evidence in *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011), as "the non-preservation or significant alteration of evidence for pending or future litigation[,]" and authorized "trial courts to exercise their discretion to impose a range of sanctions against the spoliator." *See Schroeder v. Commonwealth Department of Transportation*, 710 A.2d 23, 27 (Pa. 1998). The doctrine applies "where 'relevant evidence' has been lost or destroyed." *Mount Olivet*, *supra* at 1270. Where a party destroys or loses proof that is pertinent to a lawsuit, a court may impose a variety of sanctions, among them "entry of judgment against the offending party, exclusion of evidence, monetary penalties such as fines and attorney fees, and adverse inference instructions to the jury." *Hammons v. Ethicon, Inc.*, 190 A.3d 1248, 1281 (Pa.Super. 2018) (quoting *Mt. Olivet*, *supra* at 1272-73).

As we recently noted in *Rodriguez v. Kravco Simon Co.*, 111 A.3d 1191 (Pa.Super. 2015), penalties for spoliation have been imposed since the early 17th century. The doctrine "attempts to compensate those whose legal rights are impaired by the destruction of evidence by creating an adverse

inference against the party responsible for the destruction." ***Duquesne Light v. Woodland Hills Sch. Dist.***, 700 A.2d 1038, 1050 (Pa.Cmwlth. 1997). When we review the propriety of a sanction, "we must determine whether the court abused its discretion." ***Parr v. Ford Motor Co.***, 109 A.3d 682, 701 (Pa.Super. 2014) (*en banc*).

The duty to retain evidence is established where a party "knows that litigation is pending or likely" and "it is foreseeable that discarding the evidence would be prejudicial" to the other party. ***Mt. Olivet***, ***supra*** at 1270-71. Where spoliation has occurred, the trial court must weigh three factors in assessing the proper penalty: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." ***Gavin v. Loeffelbein***, 161 A.3d 340, 353-54 (Pa.Super. 2017) (quoting ***Parr***, ***supra*** at 702).

In the instant case, counsel for Ms. Marshall contacted ShopRite within two weeks of her fall, advised it of impending litigation, and requested that the store preserve six hours of video surveillance prior to the fall and three hours after the fall. Although Mr. McCaffery testified that ShopRite's rule of thumb was to retain only twenty minutes of tape prior to the fall and twenty minutes after the fall, it actually preserved thirty-seven minutes of footage

prior to Ms. Marshall's fall, and twenty minutes after the fall. He offered no explanation why ShopRite deviated from its typical practice herein.

At trial, Ms. Marshall took the position that by failing to retain additional footage prior to her fall, ShopRite intentionally destroyed or failed to preserve relevant evidence. She maintained that she was prejudiced thereby, and that ShopRite should have been sanctioned for spoliation. In support of her contention that the additional video was relevant, she argued that it may have shown when the spill occurred. At the very least, she contended it would have been probative as to whether ShopRite's inspection and safety precautions were being followed. Ms. Marshall asked the court to instruct the jury that it could infer "that the destroyed evidence would have been unfavorable to the offending party." **Rodriguez**, **supra** at 1196.

ShopRite argued that there was no spoliation and that no sanction was warranted because, in following its reasonable retention policy, it did not act in bad faith. Furthermore, according to Mr. McCaffery, it would have been a waste of time to go back further in time as the substance on floor was not visible anyway. In other words, ShopRite did not deny that it intentionally failed to preserve part of the video evidence; it simply maintained that the portion it deleted had no evidentiary value. The trial court concluded, "[b]ased upon Mr. McCaffery's testimony and the surveillance video itself, . . . that no relevant evidence was spoliated." Trial Court Opinion, 4/4/18, at 6. Furthermore, it found that ShopRite did not act in bad faith.

For the reasons that follow, we find that the trial court took an unreasonably narrow view of "relevant evidence" in concluding that no spoliation occurred in this premises liability case. Relevant evidence is any evidence that "has any tendency to make a fact more or less probable." Pa.R.E. 401(a). Furthermore, its finding of no bad faith on ShopRite's part was relevant in determining the severity of the sanction to impose for spoliation, but it did not negate or excuse the spoliation that occurred.

Ms. Marshall was a business visitor of ShopRite at the time of the fall and the store owed her the highest duty of care. The law is well settled that a "landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care." *Emge v. Hogosky*, 712 A.2d 315, 317 (Pa.Super. 1998) (citation omitted).

While a possessor of land is subject to liability for physical injury to his invitees due to a condition on his land, liability is predicated on a showing that the possessor

> (a) knows or by the exercise or reasonable care would discover the condition, and should realize that it involves an unreasonable risk to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Campisi v. Acme Mkts.*, 915 A.2d 117, 119 (Pa.Super. 2006); *see also* Restatement (Second) of Torts § 343.

The existence of a dangerous condition on property or the happening of an accident is not enough to establish liability. A plaintiff, in order to recover in a slip-and-fall case, must prove that the possessor of the premises knew, or with the exercise of reasonable care, should have known, of the existence of the harmful condition. Where a storeowner created the harmful condition, he is deemed to have actual or constructive notice of the condition. *Zito v. Merit Outlet Stores*, 647 A.2d 573, 574-75 (Pa.Super. 1994). Where, however, the condition is one caused by a third party, a plaintiff must prove that the premises owner either knew of the danger and failed to remediate it, or should have known had it exercised reasonable care and inspected its premises.

A plaintiff's burden of proving knowledge or notice of the dangerous condition is a heavy one. In some instances, the ubiquitous use of video surveillance to monitor premises open to the public may be useful in meeting that burden. Video surveillance allows one to rewind and view the events prior to a slip and fall. It might show the fall, or reveal how, when, and by whom the dangerous condition was created. In other instances, poor video quality, camera placement, or the nature of the spill may make it impossible to see the hazard on the floor, as was the case herein.

However, even where the camera fails to capture the precise cause of the spill or show the offending substance on the floor, surveillance video still may have probative value in a slip-and-fall case. It might show someone

dropping something on the floor in the area, although the residue is not visible. The events that occurred well in advance of the plaintiff's fall may be relevant to the defendant's knowledge or constructive notice or to whether the defendant exercised reasonable care to keep his premises safe. By viewing video surveillance, one may be able to observe the people who frequented the area prior to the fall, perhaps even another person slipping in the same area. Where, as here, store personnel are identifiable by the color of their uniforms, the video may be instructive as to when an employee last entered the area of the dangerous condition. A defendant may be able to point to such evidence in support of its contention that it inspected the area at reasonable intervals. Where no store personnel are depicted for a considerable period, a plaintiff can use the video to argue that the defendant did not conduct regular inspections of the area prior to the fall. Additionally, the longer the duration of time store personnel were absent from the area, the stronger the plaintiff's argument that the defendant store should be charged with constructive notice of the danger, *i.e.*, that they would have discovered the hazardous condition had they inspected the area at reasonable intervals. Thus, video surveillance of the area for a more extended period prior to the fall may yield evidence highly probative of whether a premises owner had notice or whether he exercised reasonable care for the safety of business invitees.

We find that counsel's letter placed ShopRite on notice to preserve the video surveillance prior to and after the fall as it was arguably relevant to

impending litigation. Nonetheless, ShopRite consciously decided to preserve only a fraction of the video requested because, as a "rule of thumb," it usually retained only twenty minutes of video prior to a fall, and twenty minutes after.[4] Furthermore, in this case, it arbitrarily preserved thirty-seven minutes of footage prior to the fall without any explanation as to why it deviated from its usual practice, why thirty-seven minutes in particular were preserved, or who made that decision. According to Mr. McCaffery, Loss Prevention people actually clip the video. He disavowed any knowledge of who made the decision to capture that particular timeframe, but "[i]t wasn't me." N.T. Jury Trial, 1/13/17, at 33.

Notably, the thirty-seven minutes prior to Ms. Marshall's fall did not even include the fifty minutes that elapsed after the last Gleason inspection of the area. Furthermore, conspicuously absent was testimony from anyone at ShopRite that he or she watched the video for the six-hour-period prior to the fall before determining that it did not contain any relevant evidence.

---

[4] Mr. McCaffery testified that, "very rarely" are they able to pinpoint from the surveillance video when something gets on the floor. N.T. Jury Trial, 1/13/17, at 46. He added that the policy is to take photographs of spills and forward them to corporate. *Id*. at 47. Rosanna Feliz, a ShopRite employee, testified that she took photographs of the area where Ms. Marshall fell, and that she remembered a mark on the floor. She downloaded the photographs to the computer, and forwarded them to Human Resources. She stated at trial that she had no idea of the whereabouts of the photographs; Mr. McCaffery stated that he looked for the photographs, but was unable to find them. *Id*. at 48.

Nonetheless, ShopRite unilaterally determined that there was no relevant evidence on the deleted tape.

ShopRite's conduct herein constituted spoliation. We agree with Ms. Marshall that the video surveillance tape depicting the events in the several hours prior to her fall was relevant for showing far more than the offending substance on the floor.[5] Additional probative value lay in demonstrating what steps, if any, ShopRite and its employees took to make the premises reasonably safe for business visitors such as Ms. Marshall in the hours leading up to the fall. Arguably, such evidence was relevant to showing knowledge, constructive notice, and a lack of care for the safety of invitees.

---

[5] We agree with the trial court that the scope of relevant evidence is not defined by the plaintiff's request. However, neither is it defined by the "rule of thumb" of the premises owner. Our rules governing the scope of discovery generally, Pa.R.C.P. 4003.1 *et seq.*, are instructive in this regard. We permit discovery of any matter, not privileged, which is relevant to the subject matter of the pending action. Relevance includes evidence that may relate to either the claim or a defense, even if it is not admissible, but is calculated to lead to admissible evidence.

At the same time, our discovery rules bar discovery of electronically stored information that is sought in bad faith, or would cause "unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party." Pa.R.C.P. 4011. There was testimony that preserving nine hours of video was time consuming and expensive. The parties hereto may have been able to reach a reasonable agreement had ShopRite communicated to Ms. Marshall's counsel that it would not preserve the amount of video requested, and why, and permitted Ms. Marshall's counsel to view the requested footage in its entirety prior to its deletion. If not, either party could have asked the court to resolve the dispute.

The trial court's finding that there was no spoliation because ShopRite did not act in bad faith is based on an incorrect application of the doctrine. Spoliation may be negligent, reckless, or intentional; a party's good or bad faith in the destruction of potentially relevant evidence goes to the type of sanction that should be imposed, not whether a sanction is warranted.[6] *See Mt. Olivet*, *supra* at 1270 ("[T]he fault of the party who altered or destroyed the evidence, requires consideration of two components, the extent of the offending party's duty or responsibility to preserve the relevant evidence, and the presence or absence of bad faith."). ShopRite unilaterally decided not to preserve arguably relevant evidence, and that constituted spoliation.

As we stated in *Mt. Olivet*, *supra* at 1269 (quoting *Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir. 1982)), "[s]poliation sanctions arise out of 'the common sense observation that a party who has notice that evidence is relevant to litigation and who proceeds to destroy evidence is more likely to have been threatened by that evidence than is a party in the same position who does not destroy the

_____

[6] Although the trial court found no bad faith on the part of ShopRite, the record arguably supports a contrary finding. ShopRite did not notify Ms. Marshall's counsel of its retention policy or that it did not intend to preserve the requested video evidence. Nor did ShopRite offer to make the tape available for counsel's viewing prior to its destruction. ShopRite could have sought a judicial ruling on the reasonableness of Ms. Marshall's demand prior to the deletion of the requested footage in light of the time and expense required to preserve it. Instead, ShopRite relied upon a vague "rule of thumb" to justify its unilateral decision to retain only minimal video prior to the fall, and even then, inexplicably did not adhere to it.

- 14 -

evidence.'"   Ms. Marshall asked the court for the least severe spoliation sanction, an adverse inference instruction.   On the facts herein, it was warranted, and the court abused its discretion in refusing the charge.

Judgment vacated.   Case remanded for a new trial.   Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/27/19