**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| MONICA GAVIN AND LUCIA CAREZANI, EXECUTRIX OF THE ESTATE OF JAMES GAVIN, DECEASED, | : : : | No. 74 MAP 2017 |
| | : : : : : : : | Appeal from the Order of the Superior Court dated May 1, 2017 at No. 341 EDA 2016 Affirming the Judgment of the Lehigh County Court of Common Pleas, Civil Division, entered March 11, 2016 at No. 2014-C-0914 |
| Appellants | | |
| v. | : : : | |
| | : : : | |
| ELAINE LOEFFELBEIN, | : : | |
| | : | SUBMITTED:  September 7, 2018 |
| Appellee | : | |

**OPINION**

**JUSTICE DONOHUE**                                             **DECIDED: March 26, 2019**

The issues presented for review in this civil tort action implicate various provisions of chapter 55 of Pennsylvania's Probate Estates and Fiduciaries Code (the "Code").[1]  In particular, this appeal addresses the meaning and effect of section 5513 of the Code, which relates to the appointment of emergency guardians.  Given its centrality to the resolution of this case, we begin by setting forth the pertinent portion of the provision:

> Notwithstanding the provisions of section 5511 (relating to petition and hearing; independent evaluation), the court, upon petition and a hearing at which clear and convincing

---

[1]  20 Pa.C.S. §§ 5501-5555 relating to incapacitated persons.

evidence is shown, may appoint an emergency guardian or guardians of the person or estate of a person alleged to be incapacitated, when it appears that the person lacks capacity, is in need of a guardian and a failure to make such appointment will result in irreparable harm to the person or estate of the alleged incapacitated person. The provisions of section 5511, including those relating to counsel, shall be applicable to such proceedings, except when the court has found that it is not feasible in the circumstances. An emergency guardian so appointed for the person or estate of an alleged incapacitated person shall only have and be subject to such powers, duties and liabilities and serve for such time as the court shall direct in its decree.

20 Pa.C.S. § 5513.[2]    In addition, an emergency order appointing an emergency guardian of the person

> may be in effect for up to [seventy-two] hours. If the emergency continues, then the emergency order may be extended for no more than [twenty] days from the expiration of the initial emergency order. After expiration of the emergency order or any extension, a full guardianship proceeding must be initiated pursuant to section 5511.

*Id.* By contrast, "[a]n emergency order appointing an emergency guardian of the estate shall not exceed [thirty] days. After [thirty] days, a full guardianship proceeding must be initiated pursuant to section 5511." *Id.* (hereinafter, the "Termination Provisions").[3]

---

[2] The General Assembly amended the Code in 1992 to add the emergency guardianship provision.  *See* Act of Apr. 16, 1992, P.L. 108.  Prior thereto, the Code included a temporary guardianship provision that did not require clear and convincing evidence or a finding that the individual appeared to lack capacity and was in need of a guardian.  *See* 20 Pa.C.S. § 5513 (1972) (amended effective July 1, 1992).  The only requirement for appointing a temporary guardian was a showing of "good cause" that "a failure to make such appointment will result in irreparable harm to the person or estate of the alleged incompetent." *Id.*

[3] As referenced in section 5513 and discussed in more detail herein, section 5511 of the Code establishes requirements related to a full guardianship proceeding.  Pursuant to section 5511(a), a court may, upon a petition and hearing and upon clear and convincing evidence, find an alleged incapacitated person "to be incapacitated" and appoint a guardian or guardians. 20 Pa.C.S. § 5511(a).  A petitioner must provide (continued…)

Based on the foregoing language, the Superior Court held that an emergency order for a guardianship of an estate automatically expires after thirty days. *Gavin v. Loeffelbein*, 161 A.3d 340, 349-50 (Pa. Super. 2017). The parties did not challenge the vitality of the emergency guardianship in the trial court. Nor did either party raise any claim before the Superior Court regarding the termination of the guardianship order or the appropriate interpretation of the Termination Provisions. In addressing an issue actually raised on appeal, the Superior Court further held that an individual subject to emergency guardianship is not incapacitated and is not precluded from making decisions about his property even when his guardian has been ordered by the court to do so on his behalf. *Id.* at 351.

We granted allocatur to address the propriety of both of these determinations. For the reasons that follow, we vacate the Superior Court's decision and remand for proceedings consistent with this Opinion.

The relevant background of this litigation follows. Appellant, Monica Gavin, brought an action alleging trespass, conversion, negligence and punitive damages against Appellee, Elaine Loeffelbein, the sister of Appellant's estranged spouse, James

---

(…continued)
written notice of the petition and hearing in large type and simple language to the alleged incapacitated person. *Id.* The notice must indicate, inter alia, the purpose and seriousness of the proceeding as well as the rights the alleged incapacitated person may lose as a result. It must also contain information regarding the alleged incapacitated person's rights, including his right to counsel. *Id.* Notably, section 5511 requires that the petition be served personally upon the alleged incapacitated person "no less than [twenty] days in advance of the hearing." *Id.* Subsection (d) allows the court to order an independent evaluation, either on its own motion or upon petition by the alleged incapacitated person. Such independent evaluation must meet the requirements related to evidence of incapacity set forth in section 5518. *Id.*, § 5511(d). Finally, as pertinent here, subsection (e) sets forth the required contents of a guardianship petition. *Id.*, § 5511(e).

Gavin ("James"). The gravamen of the underlying dispute was that, despite the appointment on May 24, 2012 of an emergency guardian of James' estate, Appellee, accompanied by James, entered the couple's former marital residence (hereinafter, "FMR") on July 9, 2012 and removed certain memorabilia that James wanted to protect from dissipation and pass on to his children.[4] *Id.* at 344. When Appellee contacted James' emergency guardian, Laurie Dart Schnaufer ("Schnaufer"), in early July and asked if she could enter the FMR herself to secure the memorabilia, Schnaufer refused her request, indicating that she would take care of it. Trial Court Opinion, 1/5/2016, at 2. In addition, when Appellee attempted to contact Schnaufer on July 9, she was unsuccessful. Thus, according to Appellant, Appellee acted without the consent or participation of Schnaufer, and therefore without any valid consent, because James, being incapacitated, was legally incapable of providing it.

At the time of the alleged torts, Appellant lived in the FMR with their children, while James resided at an independent living facility called Above and Beyond, having been moved there on May 25, 2012 by Schnaufer. *Id.* At all relevant times, Appellant and James were in the midst of a contested divorce.[5]

---

[4] Appellant alleged that 296 items of memorabilia, with an estimated value of $236,161, were missing as a result of Appellee's tortious conduct.

[5] In an amended complaint, Appellant added James as a plaintiff due to his marital interest in the memorabilia. *Gavin*, 161 A.3d at 345-46. She identified James as an incapacitated person represented by his guardian at the time of the complaint, Susan Maurer ("Maurer"). *Id.* Over Maurer's objections, the trial court sustained James' joinder as plaintiff. When James died in January 2015 during the course of this litigation, the executor of his estate was substituted for him. *Id.* at 346. Because Monica Gavin initiated the civil action and filed the appeal, the term Appellant herein refers to her alone.

(continued…)

The proceeding that led to the appointment of Schnaufer as James' emergency guardian occurred on May 24, 2012 in the Lehigh County Court of Common Pleas (the "orphans' court"). James' divorce attorney, Gerald Barr ("Barr"), filed the petition for appointment of a guardian on May 16, 2012. Order Appointing Emergency Guardians, 5/24/2012, at 1. Following the section 5513 hearing, the orphans' court issued an emergency order in which it made the following findings:

> 1. The alleged incapacitated person's ability to receive and evaluate information effectively is significantly impaired and his ability to communicate reasonable decisions is impaired thereby.
>
> [2.] The alleged incapacitated person is in need of a guardian of the person and a guardian of the estate pending a full hearing on the merits of a petition under § 5511 of the [Code].
>
> [3.] The failure to make appointments of emergency guardians will result in irreparable harm to the person and estate of the alleged incapacitated person.

*Id.* Next, the order set forth Schnaufer's duties and responsibilities as emergency guardian. Specifically, as emergency guardian of James' estate, the order afforded to Schnaufer the "powers, duties and responsibilities … to ascertain, assemble and administer" all of James' property and "to identify and ascertain the nature, extent and whereabouts of" all property co-owned by James and another person, including property that was conveyed by or on behalf of James in the last year. *Id.* at 2. The order also

---

(…continued)
In a filing dated August 28, 2018, Appellee's attorney informed this Court that (1) Appellee died on August 8, 2018 and (2) no estate has been opened with respect to her death. Suggestion of Death, 8/28/2018. We thereafter informed the parties that we would decide the appeal on the submitted briefs.

gave Schnaufer authority to make decisions on James' behalf relating to his pending divorce. *Id.*[6]

Finally, the order expressed that both emergency guardians would continue to serve until the **"conclusion of a full hearing" under section 5511 of the Code, the petition for which "shall be filed … within [thirty] days of the date of this Order."** *Id.* (emphasis added). The civil docket indicates that a section 5511 petition for the appointment of a permanent guardian of the person and estate was filed seven days later, on May 31, 2012. The full section 5511 hearing was scheduled for August 20, 2012. At the conclusion of that hearing, the orphans' court found James to be incapacitated and "in need of plenary guardianship services." Decree, 8/21/2012, at 1.[7]

The trial judge who presided over the civil tort action was the same judge who, sitting in the orphans' court, issued the emergency and permanent guardianship orders. Throughout the life of this case in the trial court, including a full jury trial, the parties litigated the issues with the understanding, shared by the trial judge, that the emergency order appointing Schnaufer as guardian of James' estate was in effect at the time of Appellee's allegedly tortious conduct. At no point during trial, in post-trial motions or in

---

[6] In addition, the order appointed Schnaufer as emergency guardian of James' person. In this regard, the court directed Schnaufer to "assure that arrangements for [James'] care, maintenance and safety are adequate and that his needs are being met, including, specifically placing him in an appropriate living facility such as Above and Beyond; and to authorize such medical treatments as are deemed necessary and advisable." Order Appointing Emergency Guardians, 5/24/2012, at 2. As noted supra, James moved into Above and Beyond the following day.

[7] The orphans' court appointed Appellee as plenary guardian of James' person and estate. Decree, 8/21/2012, at 1. Appellee's appointment as guardian of the estate was terminated on November 15, 2013 when the orphans' court appointed Maurer to take over this role.

the parties' briefs on appeal to the Superior Court was any issue raised about the continued validity, on July 9, 2012, of the emergency order.

Following closing arguments, the trial court instructed the jury regarding the relevant legal standards it must apply. Regarding conversion, the trial court explained:

> Conversion essentially requires proof that [Appellee] interfered without lawful justification, with [Appellant's] right of property in a particular asset. Showing that [Appellee] acted without lawful justification is an element of the prima facie case of conversion on which [Appellant] bears the burden of proof. Lawful justification is not an affirmative defense.

N.T., 6/12/2015, at 973.

The trial court also instructed the jury regarding James' capacity to consent. *Id.* at 964. The court read sections 5501 and 5502 of the Code directly to the jury. Section 5501 defines an incapacitated person as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. § 5501. Section 5502 sets forth the purpose of the Code, emphasizing, inter alia, that it is designed "to promote the general welfare of all citizens by establishing a system which permits incapacitated persons to participate as fully as possible in all decisions which affect them." *Id.*, § 5502. The trial court also read part of section 5513 to the jury.[8] N.T., 6/12/2015, at 966. Next, the trial court recited portions of the May 24, 2012 order appointing James' emergency guardians.

---

[8]  Apparently deeming them irrelevant to the case, the trial court omitted the Termination Provisions from its recitation of section 5513. *Id.*

Finally, the trial court instructed the jury:

> Now, an emergency guardian of the person and of the [e]state -- emergency guardians are temporary. And as you may have noted, the appointment was subject to a full hearing on the merits of a petition under [section 5511]. That [section 5511] hearing, which was held on August [20], 2012, at which time I determined that [James] was indeed incapacitated, and I adjudicated him incapacitated. With respect to the emergency guardian of the person[, it] was limited to placement, and to make medical decisions. And the emergency guardian of the [e]state was for the powers that I mentioned, in terms of -- including other things -- assembling [James'] personal property. The power to the emergency guardian of the person is not exclusive to the guardian; that is to say, that [James] was not precluded from expressing his wishes, and making some decisions regarding his personal property.

*Id.* at 969. Appellant objected to this jury charge. During deliberation, the jury asked to hear the "rules/laws around capacity" and the court's emergency guardianship order again. The trial court repeated the foregoing instructions but this time concluded by stating that "the appointment of the emergency guardian of the **[e]state** was not an exclusive power to the guardian -- to the emergency guardian of the **[e]state**. [James] was not precluded from expressing his wishes, and making some decisions with respect to his personal property." *Id.* at 1004 (emphasis added). At the conclusion of trial, the jury returned a verdict in Appellee's favor on the conversion and negligence claims. *Id.*[9]

Appellant filed a post-trial motion seeking judgment notwithstanding the verdict or, in the alternative, a new trial. She argued, as pertinent to this appeal, that the jury instructions relating to "the effect of James' incapacity and appointment of a temporary guardian" and conversion "were incorrect on matters of law or so incomplete as to be

---

[9] The trial court had previously granted Appellee's request for a nonsuit on the trespass and punitive damages claims. *Gavin*, 161 A.3d at 347.

misleading." Trial Court Opinion, 1/5/2016, at 5. She further argued that the trial court had erred in granting a nonsuit as to her trespass claim. The trial court concluded that there was no basis for relief. Acknowledging that Appellant's theory of the case hinged on James' legal inability to consent to Appellee's entry into and removal of items from the FMR, the trial court explained that the May 24, 2012 emergency order was not an adjudication of incapacity. *Id.* at 5-6. Rather, "James was found to be **allegedly** incapacitated and he **appeared** to lack capacity." *Id.* at 6 (emphasis in original).

Notwithstanding the fact that the emergency order "entrusted the guardian with 'the powers, duties and responsibilities: to ascertain, assemble and administer all of the property owned by James'," the trial court indicated that the guardian's authority did not necessarily exclude James from making decisions about his property. *Id.* at 7. Citing sections 5501, 5502 and 5521 of the Code, the trial court extrapolated that because the Code encourages incapacitated persons "to participate as fully as possible in all decisions which affect them," that charge logically applies with even more force to individuals who only appear to lack capacity. *Id.* Thus, rather than instructing the jury that James was legally incapable of giving consent, as Appellant had requested, the trial court allowed the jury to determine whether James in fact had sufficient decision-making capacity on July 9. *Id.* at 8. In light of the testimony adduced at trial, the trial court concluded that the jury had reason to find that James had capacity and, accordingly, that Appellant had not shown that Appellee "acted without lawful justification." *Id.* at 9.

Appellant timely filed an appeal to the Superior Court. As pertinent here, Appellant challenged the propriety of the jury charge related to James' capacity as well as the trial court's decision to grant a nonsuit as to her trespass claim. Specifically, she

claimed that by virtue of the emergency guardianship order, James was incapacitated on July 9, 2012, and he was thus incapable of consenting to Appellee's entry into the FMR or to the removal of the memorabilia therefrom. *Gavin*, 161 A.3d at 348. Appellant argued that the trial court therefore erroneously instructed the jury that it could determine whether James had authorized Appellee's actions on July 9, 2012. *Id.*

In a published opinion, the Superior Court disagreed with Appellant's position. Before addressing the issues raised, however, the Superior Court, sua sponte, decided that the appeal could be disposed of as a matter of law, as the emergency guardian order was no longer valid at the time of the incident giving rise to the complaint. Because "[a]n emergency order appointing an emergency guardian of the estate shall not exceed [thirty] days," the panel determined that the May 24, 2012 order appointing Schnaufer necessarily expired on June 23, 2012, despite the fact that this argument had not been raised, briefed, or addressed in any way. *Id.* at 349-50. Accordingly, the Superior Court found that James was "sui juris"[10] on July 9, 2012 when he and Appellee entered the FMR and removed the memorabilia. *Id.* at 350.

Although concluding that Appellant's "position fail[ed] for this reason alone," the Superior Court nonetheless proceeded to address the propriety of the jury instruction on capacity, acknowledging that it was a crucial issue at trial. *Id.* Assuming for the sake of argument that the emergency order was in effect at all relevant times, the Superior Court concluded that the May 24, 2012 emergency order "did not strip James of complete input into the administration of his personal property" or of the ability to

---

[10] Sui juris, as defined in Black's Law Dictionary, means "of one's own right; independent; of full age and capacity; possessing full social and civil rights." Black's Law Dictionary 1662 (10th ed. 2014).

consent to his sister's actions.  *Id.*  In reaching its conclusion, the Superior Court juxtaposed the language of section 5513 (providing, inter alia, that the court may appoint guardians for "a person alleged to be incapacitated, when it appears that the person lacks capacity") with the language of section 5511 (providing, inter alia, that the court "may find a person … to be incapacitated and appoint" guardians), noting that the emergency order "was premised upon a finding that James **allegedly appeared** to be incapacitated."  *Id.* (emphasis in original).  However, "he was not declared legally incapacitated until a hearing was held under 20 Pa.C.S. § 5511(a)."  *Id.*  Thus, the Superior Court determined that James was "presumptively competent" until the orphans' court rendered its decision on August 21, 2012, that James was incapacitated.[11]  *Id.* (noting further that the emergency order indicated that James' neurologist had determined he was "significantly impaired," not incapacitated).

Regarding whether James in fact had capacity on or about July 9, the Superior Court observed:

> James clearly conveyed to his neighbor and to [Appellee] his
> concern with Appellant and her actions with respect to their

---

[11] The Superior Court cited *Estate of Haertsch*, 609 A.2d 1384, 1386 (Pa. Super. 1992), for the proposition that "mental capacity and competency are to be presumed and before any person shall be deprived of the right to handle his or her own property and manage his or her affairs there must be clear and convincing proof of mental incompetency and such proof must be preponderating." *Id.* (quoting *In re Myers' Estate*, 150 A.2d 525, 526 (Pa. 1956)).  *Haertsch* did not involve a situation where an emergency guardianship order had been entered.  *See id.* at 1385.  Although the Superior Court did not expressly indicate that the guardianship order in *Haertsch* was entered pursuant to section 5511, its description of the order makes clear that it was. *Id.* (noting that the alleged incompetent's parents, as co-guardians, would each have custody for half the year).  Moreover, at the time the guardianship order was entered in *Haertsch*, section 5513, which authorized the appointment of a "temporary" guardian, did not require clear and convincing evidence that the alleged incapacitated person lacked capacity.  *See supra*, note 2.

children. Likewise, he cogently articulated that he wanted [the] children to have his memorabilia collection and that he feared that [Appellant] might secret it from them. James correctly informed [Appellee] that he had repeatedly asked [Schnaufer], his emergency guardian of the estate, to gather [the memorabilia] and remove it from [the FMR], but [] Schnaufer had not responded.

*Id.* Accordingly, because "James conveyed an awareness of: who he was, where he lived, his co-ownership of the [FMR], who his children were, that he was estranged from his wife, his ownership of a valuable collection of memorabilia, that he desired his children to receive it, and that he had been appointed a guardian," the panel concluded that "James had the capacity to consent to entry into his house and to direct that the collection be removed so he could protect it for" his children. *Id.* at 351 (noting that it was Appellant's own proof that demonstrated James' capacity).

Finally, the Superior Court determined that the appointment of an emergency guardian did not "strip[] James of all control over his property [or] abrogate[] his right to any input as to its disposition." *Id.* Citing to section 5502 of the Code, the panel emphasized that "the purpose of [the Code is] to promote the general welfare of all citizens by establishing a system which permits incapacitated persons to participate as fully as possible in all decisions which affect them … ." *Id.* (quoting 20 Pa.C.S. § 5502) (emphasis omitted). The panel interpreted this legislative purpose broadly as authorizing an incapacitated person under the protection of a guardian to nonetheless exercise "freedom and control over [his] physical and financial affairs." *Id.* (citing *In re Rosengarten*, 871 A.2d 1249, 1255 (Pa. Super. 2005)). Accordingly, the Superior Court concluded that the trial court properly instructed the jury that James shared decision-

making authority with his emergency guardian over matters pertaining to his property. *Id.*

The Superior Court affirmed the trial court's entry of nonsuit as to the trespass count as well. *Id.* at 355-56. The panel began by explaining that "[a] nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiffs, could not reasonably conclude that the elements of the cause of action had been established." *Id.* at 355. In this case, the Superior Court found that Appellant could not succeed on her trespass cause of action because a "right of entry constitutes an absolute defense." *Id.* Reviewing the evidence of record, the Superior Court concluded that "[Appellant's] evidence proved that a co-owner of the [FMR], James, consented to [Appellee]'s entry, and that consent abrogated [Appellant's] right to bring an action for trespass against [Appellee]." *Id.* at 356. In reaching its conclusion, the panel rejected Appellant's assertion that because James was incapacitated, he could not authorize entry into his own home. *Id.* at 355. The panel explained, again, that the May 24, 2012 order indicated James was impaired, not incapacitated, and that in any event, the emergency order had expired on June 23, 2012 such that it had no impact on James' ability to authorize entry into his home. *Id.* at 355-56.

The specific issues we agreed to review are whether "the Superior Court err[ed] by holding that emergency guardianship orders **automatically expire**" and whether "the Superior Court erred by holding that the **rebuttable presumption** that an incapacitated person is unable to engage in financial transactions is inapplicable to a person under

the protection of an emergency guardian who has been appointed for the person and his estate." *Gavin v. Loeffelbein*, 174 A.3d 1028 (per curiam) (emphasis in original).

We begin by summarizing the parties' arguments on the first issue. Appellant observes that neither the trial judge nor the parties raised a question in the courts below about the efficacy of the emergency order or the impact of the Termination Provisions. Appellant's Brief at 22 n.1. As to the merits of the Superior Court's holding, she argues that it is flawed for several reasons. First, she argues that if an emergency guardianship order expires after thirty days, courts would be forced to hold permanent guardianship hearings during an untenably narrow ten-day window. *Id.* at 23-27 (noting section 5511's requirement that a petitioner must serve the alleged incapacitated person with notice "no less than twenty days in advance" of the full hearing). She contends that this result violates the principle, affirmed by our Court, that the General Assembly is not permitted to infringe on a purely judicial function such as the scheduling of a hearing. Accordingly, she urges that we must interpret section 5513 as merely directory. *Id.* at 23-27 (citing *In re Nomination Papers of American Labor Party,* 44 A.2d 48, 50 (Pa. 1945)).

Similarly, Appellant observes that the Superior Court's interpretation of section 5513 leads to an absurd outcome by creating a gap in time between the expiration of an emergency guardianship and the appointment of a permanent guardian, despite the court having determined that "irreparable harm" will result in the absence of a guardian. *Id.* at 28. Instead, and tracking the language of the emergency guardianship order entered in this case, Appellant urges us to interpret the Termination Provisions to allow an emergency guardian to remain in place until the completion of a section 5511

hearing so long as a petition initiating the latter has been filed within thirty days of the emergency order. *Id.* at 29.

Finally, Appellant asks us to hold that an emergency order is valid per its own terms unless an interested party challenges the validity of the order before the orphans' court. Because no one (including James through his counsel) "filed an exception against" the emergency order or challenged the scheduled date for the full guardianship hearing, she posits that the order was necessarily valid on July 9, and continued until the full hearing was completed. *Id.* at 29-30.

Appellee concedes that she never raised the thirty-day expiration issue at trial and that neither the jury in rendering its verdict nor the trial court in deciding post-trial motions relied on it. Appellee's Brief at 8. Not surprisingly though, she urges this Court to adopt the Superior Court's holding. Specifically, she argues that the word "shall" in the second to last sentence of section 5513 should be assigned its unambiguous meaning. *Id.* at 13-15. She urges that "it is plain that the use of the word 'shall' is mandatory and that the statute prohibits an emergency order which exceeds thirty days." *Id.* (citing *Koken v. Reliance Insurance Company*, 893 A.2d 70 (Pa. 2006)).

In response to Appellant's position that we must read the Termination Provisions as directory rather than mandatory, Appellee characterizes section 5513 as setting the time within which a petition for full guardianship must be filed, which does not encroach on a purely judicial function. The statute does not, according to Appellee, direct the court to render a decision within a legislatively mandated time period. Rather, the power to limit the time period a guardian may serve is inherent in the General Assembly's power to create substantive standards relating to the determination of

incapacity, which includes its power to authorize the appointment of guardians. *Id.* at 16.

Essentially conceding Appellant's point that the General Assembly could not have intended a gap in time between guardianships, Appellee posits that no gap in time problem exists because the statute does not bar a court from entering interim emergency orders. *Id.* at 18. She urges that an additional emergency hearing, while inconvenient, would ensure that the "alleged incapacitated person is still in need of emergency guardian services while he or she waits for an incapacity hearing." *Id.* at 19. In addition, Appellee suggests that the alternative to the Superior Court's holding would allow the emergency guardian to remain in place indefinitely, improperly infringing on the rights of the allegedly incapacitated person who has not yet been afforded a full hearing. *Id.* at 16, 20.

Because no one challenged the validity of the emergency guardianship order (or the date of the full guardianship hearing) before the orphans' court, we conclude that the Superior Court erred in ruling on its validity. The parties and the trial court presumed its validity. The Superior Court improperly reached a contrary conclusion by sua sponte interpreting the Termination Provisions, absent advocacy from the parties or an opinion from the trial court. Both at the time of Appellee's allegedly tortious conduct, and throughout the course of the jury trial sub judice, all interested parties, including Appellee, believed that Schnaufer was still James' emergency guardian on July 9. *See* Trial Court Opinion, 1/5/2016, at 2. Whether the emergency order was valid was not properly before the Superior Court, nor could it have been under the circumstances of this case.

Section 5523 of the Code states that "no decree entered pursuant to this chapter shall be subject to collateral attack on account of any irregularity if the court which entered it had jurisdiction to do so." 20 Pa.C.S. § 5523. The General Assembly plainly intended that a perceived irregularity in a decree appointing an emergency guardian (or in a related scheduling order) would be resolved in the first instance before the orphans' court.[12] Thus, even if Appellee had raised the invalidity of the emergency order as a means of defending against this civil tort action, the orphans' court was the proper forum for the challenge. *See id.*; *cf. In re Jones*, 19 A.2d 280, 282 (Pa. 1941) (holding that appellant could not collaterally attack the fact of her brother's residency in Chester County when this fact had previously provided the basis for the Chester County court to hear her petition for the appointment of his guardian).

The Superior Court's sua sponte interpretation of section 5513 as a means of invalidating the order was improper. In light of these procedural irregularities, we vacate the portion of the Superior Court's opinion interpreting the Termination Provisions. We proceed as the parties and the trial court did and presume that the emergency guardianship order was in effect at all times relevant to this appeal.

Regarding the second issue before us, Appellant argues that James was presumptively incapacitated pursuant to section 5513 and the emergency order. She posits, however, that Appellee could have rebutted this presumption with clear and

---

[12] A statutory prohibition on collateral attacks is eminently reasonable. As discussed in more detail infra, the purpose of the Code, broadly speaking, is to protect the well-being of incapacitated persons. *See* 20 Pa.C.S. § 5502. If a decree entered pursuant to the Code can be called into question by litigants seeking only to vindicate their personal interests in a separate proceeding, the integrity of the decree and the purpose of the Code will be too easily undermined.

convincing evidence but failed to do so. By introducing the possibility that Appellee could have rebutted the presumption of incapacity, Appellant attempts to tailor her argument to counter the holding of the Superior Court that until James was adjudicated incompetent at the full guardianship hearing, he was presumptively competent.[13]

In support of her position that a presumption of incapacity applies to individuals under the protection of emergency guardians, Appellant posits that it is undisputed that James was found to "lack capacity" pursuant to section 5513. In her view, there is no appreciable distinction between a finding that an allegedly incapacitated person lacks capacity and a determination that the allegedly incapacitated person is incapacitated, as required by section 5511.

She points to the emergency order itself as proof that the orphans' court determined that James was incapacitated as a result of his section 5513 proceeding. In this regard, she observes that the emergency order characterizes James' capacity using language that mirrors the statutory definition of "incapacitated person."[14] Appellant's

---

[13] Appellee urges us to conclude that Appellant waived the question of whether a rebuttable presumption of incapacity applied to James. Appellee's Brief at 21-23. We decline to find the question waived. The question we agreed to review reflects a disagreement between the parties about the effect of an emergency guardianship, as compared to guardianship imposed following a full section 5511 proceeding, upon an individual's legal rights and decision-making authority. In the lower courts, Appellant argued that a person subject to an emergency guardianship order is without capacity to exercise those powers afforded to the guardian. *See supra*, pp. 8-10. The Superior Court held that James was "presumptively competent" until he was adjudicated incapacitated pursuant to section 5511. In this respect, the question of whether a rebuttable presumption of incapacity applies to individuals subject to emergency guardianship is fairly encompassed by, and premised upon, the position Appellant advanced at trial and before the Superior Court. Therefore, it is preserved for our review.

[14] An incapacitated person is defined as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a (continued…)

Brief at 35. In addition, the orphans' court granted James' emergency guardian authority over **all** of his property, and recognized that irreparable harm would otherwise result. *Id.* Thus, Appellant contends that we must presume the orphans' court intended to remove James' authority over his property because, in light of his impaired state, he was incapable of making decisions about it. *Id.*

Furthermore, Appellant contends that if an individual under the protection of an emergency guardian is not presumed incapacitated, the appointment of an emergency guardian is meaningless. *Id.* at 36. She concludes that the only logical interpretation of section 5513 is that once an emergency guardian is appointed, the guardian holds exclusive authority in those areas over which she is assigned responsibility.[15]

Appellee urges the adoption of the position of the Superior Court that until the adjudication of incompetency following the section 5511 hearing on August 20, 2012, James must be "presumed competent" because section 5513 permits only a finding that the allegedly incapacitated person appears to lack capacity. Appellee's Brief at 24. In this regard, she observes that because a presumption of incapacity deprives an individual of substantial civil rights, it should not be applied cavalierly "upon the mere

---

(…continued)
significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. § 5501.

[15] Appellant also cites to section 5524 of the Code which provides, in pertinent part, that incapacitated persons are "incapable of making of a contract or gift or any instrument in writing." 20 Pa.C.S. § 5524. This section is facially inapplicable to the alleged tortious conduct at issue here, which does not involve a contract, gift, or instrument in writing. Moreover, because Appellant's argument is underdeveloped, we decline her apparent invitation to consider expanding the provision – which courts have interpreted as giving rise to a rebuttable presumption of incapacity – to the circumstances of the case at bar. *See* Appellant's Brief at 32.

appearance during a truncated hearing" that an alleged incapacitated person lacks capacity. *Id.* at 28. Citing *In re Myers' Estate*, 150 A.2d 525 (Pa. 1959), she contends that applying the presumption of incapacity to individuals under emergency guardianship would render an already "dangerous statute" that is "easily capable of abuse" even more dangerous. Appellee's Brief at 28.

She also posits that sections 5511, 5512.1 (determination of incapacity and appointment of guardian), and 5518 (evidence of incapacity) all set forth standards applicable to full guardianship hearings that are not required in an emergency proceeding. *Id.* at 25-26. Thus, she concludes that if an individual is presumed incapacitated following an emergency hearing, these procedural protections and statutory standards would be rendered superfluous. *Id.*

Furthermore, Appellee reiterates the position espoused by the lower courts that the duties assigned to Schnaufer in the emergency order were not "exclusive" to the guardian. To this end, she argues that the General Assembly intended incapacitated persons (and, perforce, those who merely "appear to lack capacity,") to participate in all decisions that affect them, 20 Pa.C.S. § 5502, and to act on their own behalf to the extent that they can. *Id.*, § 5521(a). Accordingly, she asserts that the trial court's jury charge was proper because the real question in this case was whether James **in fact** had the capacity to consent to his sister's conduct on July 9. Appellee's Brief at 29, 35 (observing that the jury's finding that James in fact had capacity to consent was implicit in its finding that Appellee was not liable for conversion).

Finally, she notes that the trial judge (who also wrote the emergency order) stated during trial that James "was not an incapacitated person" on July 9 and "still

retain[ed] some rights." *Id.* at 25-26 (quoting N.T., 6/12/2015, at 944). Looking to the language of the emergency order, she contends that because it did not expressly prohibit James from consenting to his sister's entry into the FMR or to her removal of memorabilia, he retained this legal right. *Id.* at 37 (citing section 5521(a) of the Code for the proposition that an even an incapacitated person shall "act on his own behalf whenever his is able to do so").

This issue requires us to interpret section 5513 of the Code, a question of law as to which our standard of review is de novo. *See Whitmoyer v. Workers' Compensation Appeal Board*, 186 A.3d 947, 954 (Pa. 2018). As with all matters of statutory interpretation, we apply the Statutory Construction Act, which directs us to ascertain the General Assembly's intent. 1 Pa.C.S. § 1921(a). In doing so, we are to give effect to the plain language of a provision whenever that language is clear and free from ambiguity. *Id.*, § 1921(b). While we may not ignore unambiguous language under the pretext of pursuing the spirit of the statute, we must always read the words of a statute in context, not in isolation, and give meaning to each and every provision. *See Commonwealth v. Giulian*, 141 A.3d 1262, 1267 (Pa. 2016). Moreover, our interpretation must not render any provision extraneous or produce an absurd result. *See* 1 Pa.C.S. § 1921(a); *see also Holland v. Marcy*, 883 A.2d 449, 456 (Pa. 2005).

Over a century ago, in discussing the Act of June 25, 1895 ("for the protection of persons unable to care for their own property"), this Court recognized that a statute of this sort is "easily capable of abuse by designing relatives to accomplish the very wrong intended to be guarded against, and therefore to be administered by the courts with the utmost caution and conservatism." *In re Hoffman's Estate*, 58 A. 665, 666 (Pa. 1904).

Similarly, in *Denner v. Beyer*, 42 A.2d 747 (Pa. 1945), we observed that "it is a serious thing to deprive any person of the control of their own property or of their right to dispose of it by will." *Id.* at 752.

Cognizant of these well-settled concerns, the General Assembly has designed the Code to create a system of requirements that compel courts to narrowly tailor every guardianship order – emergency and permanent alike – to reflect the individual needs and abilities (or lack thereof) of the incapacitated person. The stated purpose of the Code provisions dealing with incapacitated persons is to accomplish the goal of assisting these persons while employing the "least restrictive" methods of doing so. 20 Pa.C.S. § 5502. Guardians should be appointed only when such services are necessary. *Id.* Section 5511 specifies that when seeking a guardianship, the petitioner must set forth, inter alia, a description of the functional limitations and physical and mental condition of the alleged incapacitated person, the steps taken to find less restrictive alternatives, and the specific areas of incapacity over which it is requested that the guardian be assigned powers. *Id.*, § 5511(e). At a guardianship hearing, evidence must be presented regarding the types of assistance required by the person and as to why no less restrictive alternative to guardianship would be appropriate.[16] *Id.*, § 5518. Section 5512.1 requires the orphans' court to make specific findings of fact concerning six enumerated items, including, among others, the extent of the individual's

---

[16] Section 5512.2 provides that the court may hold a review hearing at any time to assess, inter alia, whether an incapacitated person's capacities have changed. 20 Pa.C.S. § 5512.2. Section 5517, in turn, provides that a court may, following a review hearing, find that an individual has regained or lost capacity in certain areas or is no longer incapacitated. In such a case, the court must modify the existing guardianship order accordingly. *Id.*, § 5517.

capacity to make and communicate decisions and the need for guardianship services. *Id.*, § 5512.1(a). This section further provides that when appointing a guardian of the estate, if the person is only partially incapacitated, then the order shall appoint only a limited guardian "with powers consistent with the court's finding of limitations." *Id.*, § 5512.1(d). Except in those areas designated by the court order as areas over which the limited guardian has power, "a partially incapacitated person shall retain all legal rights." *Id.*, § 5512.1(g).

These procedures and protocols apply with equal force both to permanent guardianship proceedings under section 5511 and emergency guardianship proceedings under section 5513. The relevant statutory provisions do not distinguish between permanent and emergency proceedings, and it is thus clear that the General Assembly intended for section 5513 proceedings to replicate section 5511 guardianship proceedings to the greatest extent possible, whenever possible. Section 5513 expressly provides that "[t]he provisions of section 5511, including those relating to counsel, shall be applicable to such proceedings, except when the court has found that it is not feasible in the circumstances." *Id.*, § 5513. As this language reflects, because section 5513 provides for the appointment of guardians on an expedited basis, the emergency nature of the proceedings may, in some cases, not permit application of the full panoply of due process protections that are required in section 5511 proceedings, e.g., the twenty day notice requirement (and perhaps other protections in the Code).[17]

---

[17] In the case sub judice, the section 5513 proceeding substantially replicated a section 5511 hearing. The orphans' court conducted a hearing, during which James was represented by counsel, and considered the testimony of James' neurologist regarding his mental limitations. Moreover, the transcript from that hearing reveals that Appellant (continued…)

The exigency permits the orphans' court to proceed with the appointment, however, because the failure of the court to step in for the protection of the incapacitated person would result in irreparable harm.

This singular difference between sections 5511 and 5513 does not support Appellee's contention (and that of the lower courts) that the General Assembly intended that individuals under the protection of an emergency guardian may continue to make independent decisions about matters expressly assigned to their guardians. Just as with a guardian appointed pursuant to section 5511, once the court appoints an emergency guardian, it is the court's decree, narrowly tailored and limited to the individual's specific deficiencies, that determines what kinds of decisions an individual will no longer be permitted to make. That a guardian is appointed after an **emergency** proceeding does not itself impact the extent to which an individual is legally incapable of making decisions. Rather, by assigning specific duties to the guardian, the orphans' court designates those areas of decision making to be within the exclusive purview of the guardian. If this were not the case, the entire purpose of appointing an emergency guardian – which is to avert irreparable harm resulting from decisions made by the incapacitated person – would be undermined. Any other interpretation of the relevant statutory language leads to an impermissibly absurd result, namely, that the allegedly incapacitated person is in need of a guardian and that irreparable harm will result

_____

(…continued)
and her children urged the orphans' court not to appoint an emergency guardian, offering that they could sufficiently provide a less restrictive alternative to accommodate James' limitations, and testifying that James was still capable of making certain decisions. The orphans' court considered this testimony on the record and appointed an emergency guardian nonetheless. N.T., 5/24/2012, at 47-69.

without one, but that the incapacitated person is still capable of making his own decisions in the areas where incapacity has been demonstrated. Neither the potentially truncated nature of a section 5513 proceeding nor the limited duration of the resulting guardianship renders the incapacitated individual any more capable of making decisions in those areas assigned to his guardian by court order. It simply cannot be the case that an individual is presumed competent even in the areas over which a guardian has been assigned control.[18] In arguing to the contrary, Appellee misapprehends the overarching purpose of the Code.

The case at bar involves a straightforward dispute over the distribution of marital assets in a contested divorce proceeding complicated by the involvement of another family member. However, the principle established by the lower courts – that the express terms of an emergency guardianship order can be ignored in pursuit of the spirit of the Code – has broad and dangerous consequences. For example, an emergency guardianship order that grants authority to a guardian to sell an asset where time is of the essence must empower the guardian with the exclusive authority to execute on the transaction. Likewise and unquestionably, an emergency order giving a guardian the authority to make a critical medical decision must confer the guardian with the exclusive ability to make the decision. Any doubt about the scope of the guardian's exclusive authority must be resolved by the orphans' court prior to the issuance of a

---

[18] Accordingly, we are not persuaded by Appellee's contention that the language in section 5513 ("when it appears that the person lacks capacity"), when read in context, must mean something different than the language in section 5511 ("to be incapacitated"). *See supra*, p. 20.

narrowly tailored guardianship order. The authority of a guardian cannot be subject to the open-ended second guessing endorsed by the courts below.

We recognize and highlight that the Code anticipates that a person under a guardianship order will, to the extent possible, be allowed to participate in decisions affecting him or her. For example, section 5521(a), relating to the duties of a guardian of the person, provides that if a guardian of the person must be appointed, the "guardian [of the person] shall also **encourage** the incapacitated person to participate to the maximum extent of his abilities in all decisions which affect him, to act on his own behalf whenever he is able to do so and to develop or regain, to the maximum extent possible, his capacity to manage his personal affairs." 20 Pa.C.S. § 5521(a) (emphasis added). This legislative command that a guardian must encourage an incapacitated person's participation in decisions that affect him does not mean that the guardian relinquishes her exclusive, court-ordered decision-making authorities. Rather, a guardian acts in compliance with section 5521(a) by considering her ward's desires and, perhaps, consenting to them, not by substituting the ward's authority for her own.[19] In the case at bar, section 5521(a) at best supports the proposition that Schnaufer should have considered James' request to remove the memorabilia from the FMR, not that James could circumvent the guardian because he had co-equal authority to authorize his sister to do so absent Schnaufer's approval.

Here, the orphans' court, in the broadest terms, assigned control over James' property to his emergency guardian of the estate. Specifically, Schnaufer had the

---

[19] Similarly, the express language of section 5521(a) presupposes the guardian's participation in discerning when her ward may be capable of acting on his own behalf. 20 Pa.C.S. § 5521(a).

"powers, duties and responsibilities … to ascertain, assemble and administer all of the property owned by [James]" and "to identify and ascertain the nature, extent and whereabouts of any and all property owned by [James] and one or more other persons," including property that was conveyed by or on behalf of James in the last year. Order Appointing Emergency Guardians, 5/24/2012, at 2.[20]

Because we conclude that James' ability to consent to Appellee's conduct should be determined by inverse reference to the duties assigned to Schnaufer in the unchallenged court order, we hold that the jury instructions regarding capacity were misleading,[21] and the Superior Court erred in concluding that James was presumptively competent on July 9, 2012.[22] If James or Appellee believed that Schnaufer was failing to perform her duties by not removing the memorabilia from the FMR or that the guardianship order was too broad in relation to James' incapacity, their exclusive

---

[20] Notably, the Code provides that an incapacitated person's guardian of the estate has the same "powers, duties and liabilities" set forth in certain enumerated provisions relating to personal representatives of decedents' estates and guardians of minors' estates. *Id.*, § 5521(b). Specifically, as pertinent here, the guardian of the estate "shall have the right to, and **shall take possession of**, maintain and administer, each real **and personal asset**" of her ward "to which [her] appointment extends." *See id.*, § 5141 (relating to possession of real and personal property by the guardian of the estate of a minor) (emphasis added).

[21] No party has challenged the propriety of submitting to a jury the scope of the orphans' court's guardianship order and thus, we do not address the issue.

[22] It appears that the trial court at times may have viewed the question of James' capacity to consent as related to his guardianship of the person rather than to his guardianship of the estate. *See supra*, p. 8 (observing discrepancy in trial court's jury instruction). Consistent with our holding that the language of the emergency guardianship order governs the extent to which James had capacity to consent, we observe that whether he could consent to Appellee's **entry** into the FMR – as opposed to her removal of memorabilia therefrom – may not implicate the duties assigned to his guardian of the estate. We leave resolution of these questions for decision on remand.

recourse was to petition the orphans' court for a review hearing pursuant to section 5512.2 of the Code. No such review hearing occurred prior to July 9, 2012 or at any point thereafter.

In conclusion, consistent with the position of the parties up until the present appeal, we hold that James was still under the protection of the unchallenged May 24, 2012 emergency order on July 9, 2012 when he and Appellee entered the FMR and removed the memorabilia. It was error for the Superior Court to consider and opine on the validity of the order on the basis of the Termination Provisions. Moreover, we hold that an individual under the protection of an emergency guardianship order has been determined to lack sufficient capacity to make certain decisions and that the extent of his decision-making capacity depends on the specific "powers, duties and liabilities" afforded to the guardian by court order. *See* 20 Pa.C.S. § 5513. We therefore vacate the Superior Court's decision and remand the matter to that court for proceedings consistent with this Opinion.

Chief Justice Saylor and Justices Baer, Todd, Dougherty and Wecht join the opinion.

Justice Mundy files a concurring opinion.