IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela Wilson, Brian Wilson, :
individually and as Trustee of the :
Trokhinya-Wilson 2010 Family :
Trust, Vlad Wilson, individually :
and as Trustee of the Trokhinya-Wilson :
2010 Family Trust, Maya Roytlender, :
Nonna Yelan, Val Yelan, Alex Yelan, :
Elena Merkhassina, Sergei Merkhassine, :
Leonid Mandel, Klara Mandel, :
Yelena Mandel, Irina Mandel, Michael :
Balagula, individually and as Trustee :
for Yefim Balagula and Yevgenia :
Balagula, Yefim Balagula, and :
Yevgenia Balagula :
              :
         v. : No. 507 C.D. 2021
              : Argued: September 11, 2023
              :
Wild Acres Lakes Property and :
Homeowners Association, Inc., :
              :
              :
           Appellant :

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                 FILED: December 6, 2023

         Wild Acres Lakes Property and Homeowners Association, Inc. (the Association) appeals from an order of the Pike County Court of Common Pleas (trial court) sustaining the Application for Review of Contested Corporate Action

(Application) filed by Angela Wilson, et al. (Appellees). The Association contends that the trial court erred in finding that the special assessments levied against Appellees were void *ab initio* under the Association's By-laws, because the special assessments were permitted under Section 5314(c)(4) of the Uniform Planned Community Act (UPCA), 68 Pa. C.S. §5314(c)(4).[1] After careful review, we affirm.

Appellees are current and former homeowners in the Association, some of whom served as members of the Association's Board of Directors (Board). Application for Review of Contested Corporate Action (Application) ¶¶4-5; Reproduced Record (R.R.) at 10a.[2] During their term of service, the Association was subject to a Review of Contested Corporate Action for the removal of fellow Board member, Linda Clarke (the Clarke litigation), and the Director-Appellees were joined in their capacity as Board members. Application ¶¶6-7; R.R. at 10a. Throughout the Clarke litigation, Appellees were represented by the Association's general counsel, Bugaj & Fisher (the Firm), while the Association obtained separate counsel. Application ¶¶8-9; R.R. at 10a-11a.

The Director-Appellees were dismissed from the Clarke litigation pending its resolution by Preliminary Objections in March 2014. Appellees' Brief at 6. However, the Firm continued to invoice the Association for fees incurred in connection with the Clarke litigation for nearly seven months after the Director-Appellees were dismissed. Supplemental Reproduced Record (S.R.R.) at 78b-

---

[1] Section 5314(c)(4) of the UPCA, 68 Pa. C.S. § 5314(c)(4), provides in relevant part: "[i]f a common expense is caused by the negligence or misconduct of any unit owner, the association may assess that expense exclusively against his unit."

[2] We will correct the Association's improper pagination of the Reproduced Record. *See* Pa.R.A.P. 2173 ("[T]he reproduced record . . . shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc. . . .").

113b.[3]  Nevertheless, as Board Members, Appellees approved paying the Firm for this period.  Trial Court's Hearing, Notes of Testimony (N.T.), 07/10/2020, at 53-54; R.R. at 96a-97a.

In November 2014, Director-Appellees were removed from their positions in a routine election and succeeded by an entirely new Board.  Trial Court's Hearing, N.T., 07/10/2020, at 106; R.R. at 149a.  On February 21, 2015, the new Board held a meeting following the conclusion of the Clarke litigation.  *Id*. at 149a-150a.  At this meeting, the Board passed a motion (Motion), which: (1) reimbursed Clarke for her legal fees incurred as a result of her removal from the Board; and (2) stated "[e]very attempt will be made to recover as much of the damages as is proper and in such a manner as is legally allowed."  *Id*.; S.R.R. at 74b-77b.

Relying on this Motion, and without the approval of the general membership, the Association levied special assessments against Appellees in amounts corresponding to the length of time Appellees served on the Board.[4]  Trial Court's Hearing, N.T., 09/25/2020, at 11, 27; R.R. at 197a, 213a.  Appellees refused to pay the special assessments.  Appellees' Brief at 10.  As a result, the Association amended a separate civil complaint filed in the trial court seeking payment of the special assessments and suspended the privileges and rights attendant to Appellees' ownership in the Association, such as access to common areas and amenities.  *Id*.

On October 16, 2018, Appellees filed the instant Application in the trial court.  R.R. at 7a-16a.  In relevant part, Appellees alleged that the Association was

---

[3] We will likewise correct Appellees' improper pagination of the Supplemental Reproduced Record.  *See* Pa.R.A.P. 2173 ("[A]ny supplemental reproduced record shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., . . . followed in any supplemental reproduced record by a small b, thus 1b, 2b, 3b, etc.").

[4] Appellees were notified of this special assessment by letters dated June 23, 2015, April 12, 2018, April 27, 2018, May 22, 2018, and June 15, 2018.  S.R.R. at 65b-72b.

3

responsible for Director-Appellees' attorney's fees and, regardless, that the special assessments violated the Association's By-laws. Application ¶¶11, 17-18; R.R. at 11a-12a. However, the Association denied responsibility for Appellees' attorney's fees following their dismissal from the Clarke litigation. Answer to Application ¶¶16-17; R.R. at 20a. At trial, a Board Member for the Association testified that the Board understood Section 5314(c)(4) of the UPCA, 68 Pa. C.S. §5314(c)(4), to permit the Board to levy the special assessments against Appellees. N.T., 07/10/2018, at 133-135; R.R. at 176a-78a.

The trial court found that the special assessments were void *ab initio*. Trial Court Opinion, 04/13/2021, at 1-6; R.R. at 254a-59a. Although the trial court noted that the UPCA permits special assessments to be levied against individuals rather than the entire membership, it also noted "the Association failed to impose the [special assessments] in accord with its own [By-laws]." Trial Court Opinion at 3; R.R. at 256a. Section 6.2 of the By-laws provides:

> Section 6.2 DUES, ATTORNEY FEES, LEGAL FEES, FINES, COLLECTION COSTS AND ASSESSMENTS
>
> A.    Dues, fees, charges, assessments, fines and other financial obligations of membership as allowed for in these [By-laws] or under the laws of the Commonwealth of Pennsylvania, except as specifically reserved to the membership under these laws (including as set forth in Article VI Section 6.1(C), shall be fixed by the Board and may vary reasonably amongst category or type of lot).
>
> B.    Special assessments must have the approval of the general membership.
>> i.    Special assessments in excess of twenty (20%) percent in the annual aggregate of the dues levied in support of the operating budget, necessitated by operating budget shortfalls, must be approved by the membership.

4

ii. Such special assessments may vary reasonably amongst category or type of lot.

S.R.R. at 32b-33b. However, the trial court traced the special assessments to the Board's February 21, 2015 Motion, finding no evidence in the record of the general membership's approval. Trial Court Opinion at 4; R.R. at 257a. Consequently, the trial court found that the special assessments did not conform to the Association's own By-laws and were, thus, void *ab initio*.[5] *Id.*

On appeal,[6] the Association raises two issues. First, the Association claims that the trial court ignored its rights under the UPCA, which, it posits, empowers the Board to single-handedly levy the special assessments against Appellees based on the Director-Appellees misconduct or negligence. Appellant's Brief at 10-12. Next, the Association contends that the trial court erred in interpreting the Association's By-laws to require general membership approval for the special assessments. *Id.* at 16. As to both issues, we disagree.

With respect to the first issue, the Association argues that Director-Appellees were negligent in continuing to pay the Firm for legal representation,

---

[5] Similarly, the trial court addressed the issue of whether the Association rightfully revoked Appellees' rights and privileges attendant to their membership in the Association. Trial Court Opinion at 4-6; R.R. at 268a-70a. Concerning whether the Association possessed such power, the trial court found that the By-laws expressly empowered the Association to revoke certain privileges "if a member fails to pay any lawful assessment within thirty (30) days after its due date." Trial Court Opinion at 5; R.R. at 269a. However, because the special assessment was found to be unlawful, this provision could not operate against Appellees. Trial Court Opinion at 6; R.R. at 270a. Thus, the revocation of Appellees' privileges and rights were found void and restored pending any further actions by the Association. Neither the Appellant nor Appellees preserved this issue for review on appeal. *Id.*

[6] "Our scope of review is limited to determining whether the trial court abused its discretion, committed an error of law or reached a decision which lacks substantial evidentiary support." *Mulrine v. Pocono Highland Community Association, Inc.*, 616 A.2d 188, 189 n. 3 (Pa. Cmwlth. 1992).

because Appellees had been dismissed from the Clarke litigation and the Firm no longer had a role or client in the matter. Appellant's Brief at 14-16. To that end, the Association cites Section 5303(a) of the UPCA, 68 Pa. C.S. §5303(a):

> In the performance of their duties, the officers and members of the executive board shall stand in a fiduciary relation to the association and shall perform their duties, including duties as members of any committee of the board upon which they may serve, in good faith; in a manner they reasonably believe to be in the best interests of the association; and with care, including reasonable inquiry, skill and diligence as a person of ordinary prudence would use under similar circumstances.

Appellant's Brief at 13. Likewise, it notes that there is a duty "to use ordinary care and prudence in managing the property and financial affairs of the community that are subject to its control. . . ." Appellant's Brief at 13-14 (citing *McMahon v. Pleasant Valley West Association*, 952 A.2d 731, 736 (Pa. Cmwlth. 2008)) (internal citation omitted). Taken together, the Association claims that this purported breach of Appellees' fiduciary duties empowered the Board to unilaterally levy the special assessments under Section 5314(c)(4) of the UPCA. *Id*. at 16.

Conversely, Appellees contend that Section 5314(c)(4) of the UPCA requires an express finding of negligence or misconduct to levy special assessments under this section. Appellees' Brief at 17. As such, Appellees claim that the Association failed to allege negligence or misconduct before levying the special assessments,[7] and that *any* of the Association's claims under Section 5314(c)(4) must fail. *Id*. at 17-18.

_____

[7] In the February 21, 2015 Board Meeting Minutes, the Association never expressly refers to Appellees' actions as amounting to negligence or misconduct. Yet, the Meeting Minutes includes the following statement:

**(Footnote continued on next page…)**

6

However, Appellees' alleged negligence or misconduct is of no consequence here. Section 5314(c) of the UPCA, 68 Pa. C.S. §5314(c)(4), provides in relevant part: "[i]f a common expense is caused by the negligence or misconduct of any unit owner, the association may assess that expense exclusively against his unit." Yet, the trial court recognized as much when it held that "both the UPCA and the [By-laws] very clearly permit the imposition of [special assessments]." Trial Court Opinion at 3; R.R. at 267a. Regardless, Section 5314(c)(4) does not permit a planned community to levy special assessments against homeowners for their purported negligence or misconduct by any means possible. Special assessments must still comply with the planned community's duly enacted by-laws. *See* Section 5306(b) of the UPCA, 68 Pa. C.S. §5306(b) ("[s]ubject to the provisions of the declaration, the [by-laws] may provide for any other matters the association deems necessary and appropriate"). Here, the Association deemed it necessary and appropriate to enact By-laws establishing the process by which special assessments may be imposed. Thus, the trial court correctly determined that this case does not turn on Section 5314(c), but on whether the Association acted in conformity with its own By-laws.[8]

In the ongoing attempt to correct any inappropriate actions by the offending members of the Board of Directors in place from June 08, 2013[,] until October 04, 2014[,] this Board has been reviewing actions, Motions and litigation initiated by same. As a result of this review it has been determined that, among other action, the following Directors incurred considerable legal fees associated in their defense of these improper charges which this Board has deemed unjustified.

S.R.R. at 77b.

[8] To the extent that Appellees ask this Court to decide whether Section 5314(c)(4) requires an explicit "finding" of negligence or misconduct before imposing a special assessment, we need **(Footnote continued on next page…)**

Concerning the issue of interpretation,[9] both parties acknowledge that the by-laws of a nonprofit corporation are subject to the same rules of interpretation as statutes and other written instruments and must be "construed according to their plain meaning within the context of the document as a whole." *Purcell v. Milton Hershey School Alumni Association*, 884 A.2d 372, 379 n.10 (Pa. Cmwlth. 2005). However, the Association emphasizes that a court must give effect to each provision of the By-laws, citing *Gavin v. Loeffelbein*, 205 A.3d 1209, 1221 (Pa. 2019):

> While we may not ignore unambiguous language under the pretext of pursuing the spirit of the statute, we must always read the words of a statute in context, not in isolation, and give meaning to each and every provision. Moreover, our interpretation must not render any provision extraneous or produce an absurd result.

---

not reach this issue here, in part, because deciding the issue is not necessary for the disposition of this case. But also, because, as the trial court noted: "While we agree that the Association did not formally allege that the [Appellees] acted negligently or undertook some misconduct specifically, we acknowledge that letters sent to the [Appellees] in the summer of 2015 adequately informed them their actions were considered improper for the purposes of the UPCA." Trial Court Opinion at 3-4; R.R. at 256a-57a.

[9] In their Statement of Questions Involved, Appellees aver that the instant case presents three issues:

> (1) Are [the Association's] [s]pecial [a]ssessments invalid under both [the Association's] By-laws and the [UPCA]?
>
> (2) Are [the Association's] [s]pecial [a]ssessments invalid as both improperly implemented by the Board of Directors and levied in violation of [Appellees'] Due Process Rights to Notice?
>
> (3) Is the basis for the [s]pecial [a]ssessments unsupported by the facts in that Appellees acted in accordance with the Association's By-laws?

Appellees' Brief at 4. To the extent that Appellees address the issues raised by the Association, they do so by addressing what they characterize to be the first issue.

8

Appellant's Brief at 17-18 (internal citations omitted). For this reason, the Association claims the trial court erred, because the trial court relied exclusively on Section 6.2(B) of the By-laws, and thereby failed to give effect to Section 6.2(B)(i). Appellant's Brief at 19. Critically, the Association argues that Section 6.2(B)(i)-(ii) "defines when membership approval is necessary," and thus, the trial court considered Section 6.2(B) in isolation. *Id*. "That a special assessment should be considered by the membership when there is a shortfall in the operating budget makes sense, since the special assessment would affect all members of the [A]ssociation, not a few who negligently cause a common expense." *Id*. The Association further argues that this interpretation is supported by other provisions in the By-laws. *Id*. As its only example, the Association notes Section 6.1(B)(ii) requires membership approval where the operating budget exceeds 10% of that which was approved by the Board of Directors. *Id*.

In turn, Appellees argue that Section 6.2(B) of the By-laws plainly required general membership approval to validly impose the instant special assessments. Appellees' Brief at 15. Regarding Section 6.2(B)(i), Appellees contend that it does not define when membership approval is necessary, but "merely augments" Section 6.2(B). *Id*. at 16. Consequently, the subsection applies only to special assessments necessitated by "operating budget shortfalls." *Id*. Here, Appellees trace the special assessments solely to the Motion passed by the Board at their February 21, 2015 Meeting, which stated "every attempt will be made to recover as much of these damages as is proper and in such a manner as is legally allowed". *Id*. at 15. Because the special assessments at issue were levied without general membership approval and to recoup damages for attorney's fees, rather than to remedy an operating budget shortfall, Appellees aver that Section 6.2(B)(i) does

9

not apply here. *Id*. at 16. Thus, Appellees argue that Section 6.2(B) required the Association to obtain the approval of the general membership. *Id*.

Insofar as both parties rely on *Purcell*, 884 A.2d at 379 n.10, *inter alia*, they do so to apply relevant provisions of the Statutory Construction Act of 1972. In particular, the parties rely on Section 1921 of the Statutory Construction Act, 1 Pa. C.S. §1921(a)-(b), which provides:

> (a)    The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

> (b)    When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

Therefore, this Court must interpret a by-law so that "no provision is 'mere surplusage.'" *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 918 A.2d 171, 175-76 (Pa. Cmwlth. 2007), *aff'd*, 974 A.2d 1144 (Pa. 2009) (citing 1 Pa. C.S. §1921(a)). "In addition, in determining whether language is clear and unambiguous, we must assess it in the context of the overall statutory scheme, construing all sections with reference to each other, not simply examining language in isolation." *Whitmoyer v. Workers' Compensation Appeal Board (Mountain Country Meats)*, 186 A.3d 947, 954 (Pa. 2018).

With these principles in mind, we must discern the plain meaning of the By-laws. Here, Section 6.2(B) makes approval by general membership mandatory as to all special assessments: "Special assessments *must* have the approval of the general membership." (Emphasis added.) However, Section 6.2(B)(i) plainly makes general membership approval mandatory for special assessments necessitated by an operating budget shortfall and in excess of 20% of the aggregate operating budget.

10

Section 6.2(B)(ii) permits the Association to vary the special assessment it levies against members among lot sizes. Taken together, if this Court interprets the By-laws to mean that Section 6.2(B)(i) and (ii) define when a special assessment requires general membership approval, as the Association urges, then only one such circumstance exists: where a special assessment is necessitated by a budget shortfall *and* the assessment exceeds 20% of the annual operating budget. Ultimately, this interpretation renders Section 6.2(B) as mere surplusage, because it controverts the provision's plain meaning by limiting general membership approval to a single specific class of special assessments. This interpretation is similarly unavailing, because Section 6.2(B)(ii) only describes a permissible special assessment, rather than defining when general membership approval is necessary.

As such, the Association mistakenly argues that the trial court considered Section 6.2(B) in isolation, thus rendering Section 6.2(B)(i) extraneous. The Association levied the special assessment against Appellees in an effort to correct the alleged inappropriate actions taken by Appellees as members of the preceding Board of Directors, not to remedy an operating budget shortfall. *See* S.R.R. at 77b. Consequently, the present matter is governed solely by Section 6.2(B). If this matter concerned special assessments that were necessitated by an operating budget shortfall and did *not* exceed 20% of the annual operating budget, then disregarding Section 6.2(B)(i) in favor of Section 6.2(B) may have presented a conflict for resolution or rendered Section 6.2(B)(i) extraneous. However, whatever conflict may exist between these two provisions is not at issue here, because Section 6.2(B)(i) is plainly inapplicable. Finally, the Association's argument that its interpretation should prevail when read in reference to other provisions of the By-laws is unpersuasive, because the single example proffered by the Association deals

11

exclusively with the operating budget, where the provision at issue herein deals with special assessments of every type.

Therefore, the By-laws plainly required the Association to obtain the general membership's approval before imposing the special assessments against Appellees. Because the Association's Board of Directors enacted the special assessments unilaterally, in violation of Section 6.2(B) of the By-laws, the trial court did not err when it determined that the special assessments were void *ab initio*.

Accordingly, the order of the trial court is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela Wilson, Brian Wilson, :
individually and as Trustee of the :
Trokhinya-Wilson 2010 Family :
Trust, Vlad Wilson, individually :
and as Trustee of the Trokhinya-Wilson :
2010 Family Trust, Maya Roytlender, :
Nonna Yelan, Val Yelan, Alex Yelan, :
Elena Merkhassina, Sergei Merkhassine, :
Leonid Mandel, Klara Mandel, :
Yelena Mandel, Irina Mandel, Michael :
Balagula, individually and as Trustee :
for Yefim Balagula and Yevgenia :
Balagula, Yefim Balagula, and :
Yevgenia Balagula :
                                    :
                    v.              : No. 507 C.D. 2021
                                    :
Wild Acres Lakes Property and       :
Homeowners Association, Inc.,        :
                                    :
                    Appellant       :

# **O R D E R**

AND NOW, this 6<u>th</u> day of <u>December</u>, 2023, the order of the Pike County Court of Common Pleas dated April 13, 2021, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge